# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2013-CA-01631-SCT

## CONSOLIDATED WITH

## NO. 2008-CT-01362-SCT

*DRAKE L. LEWIS*

*v.*

*TONIA D. (LEWIS) PAGEL*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/06/2013 |
| TRIAL JUDGE: | HON. CARTER O. BISE |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | THOMAS WRIGHT TEEL |
| ATTORNEY FOR APPELLEE: | DEAN HOLLEMAN |
| NATURE OF THE CASE: | DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED IN PART, REVERSED IN PART, AND THE CASE IS REMANDED - 08/13/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., CHANDLER AND KING, JJ.**

**CHANDLER, JUSTICE, FOR THE COURT:**

¶1.     Drake and Tonia Lewis[1] were divorced by order of the Harrison County Chancery Court on January 11, 2008. Drake filed an appeal challenging the chancellor's property division, and the appeal was assigned to the Court of Appeals. The Court of Appeals affirmed in part and reversed in part and remanded. ***Lewis v. Lewis***, 54 So. 3d 233, 244

---

[1] Shortly after the divorce, Tonia remarried and became Tonia Pagel.

(Miss. Ct. App. 2009). This Court on certiorari modified the Court of Appeals' order on remand. *Lewis v. Lewis*, 54 So. 3d 216, 219 (Miss. 2011). During the appellate process, both parties filed motions for modification of child support and for contempt. After the remand, the chancellor held a hearing and entered an order addressing the property division in accordance with the instructions from this Court and the Court of Appeals. The chancellor entered a separate order modifying child support, finding Drake in contempt and awarding Tonia attorney's fees. Drake has appealed all issues.

¶2. We affirm in part and reverse in part and remand. We reverse the chancellor's denial of Drake's motion to modify child support and remand for the chancellor to reconsider this issue consistent with this opinion. In all other respects, we affirm the judgments of the chancery court.

**FACTS**

¶3. Drake and Tonia married in Columbia, Missouri, on March 2, 1991. Three children were born of the marriage; all were under age eighteen at the time of the trial. In 1996, the Lewises moved to Gautier, Mississippi, and entered into real estate ventures with Drake's father, a property developer based in Louisiana. Drake's father established a trust in Drake's name that included real property. Later, the trust distributed Drake's trust property to Drake and it was titled in his name. In 2001, Drake and Tonia formed Legacy Holdings, Inc. ("Legacy"), a general contracting business constructing residential homes. Legacy was a closely-held corporation, and Tonia and Drake each owned fifty percent. Tonia testified that Drake handled the building projects, while she worked with the home buyers to select

2

materials for use in the homes. Tonia also performed bookkeeping until Legacy hired a secretary. Legacy built homes on trust property, on property Drake received from the trust, and on property that Drake and Tonia purchased together.

¶4.     During the marriage, Drake had two affairs, prompting Tonia to file for a divorce on the ground of adultery in 2006. The parties separated in June 2006. At the divorce trial, the issues of the valuation of Legacy and the classification and valuation of the various real estate holdings were hotly contested. The chancellor granted Tonia a divorce on the ground of adultery. The chancellor awarded Tonia assets totaling $865,733, and awarded Drake assets totaling $1,807,882, including Legacy, which the chancellor valued at $1,148,270. Drake's allotment of assets also included the repayment of a loan that the parties had made to Legacy, totaling $156,555. The chancellor awarded Tonia rehabilitative alimony of $2,000 per month for twelve months. The chancellor gave the parties joint legal custody of the children, with Tonia to have physical custody and Drake to have visitation. Finding that Drake had a net monthly income of $7,600, the chancellor ordered him to pay child support in the amount of $1,606 per month, equaling 22% of his net income. The chancellor also ordered Drake to bear all college expenses for the children.

¶5.     Drake appealed, arguing that the equitable distribution was erroneous because the chancellor had made errors in classifying and valuing certain assets. This Court assigned Drake's appeal to the Court of Appeals, which affirmed in part and reversed in part and remanded. *Lewis v. Lewis*, 54 So. 3d 233, 244 (Miss. Ct. App. 2009). At the trial, Drake had sought to show that Legacy had no value. The chancellor rejected Drake's contention, finding

3

from three documents submitted by Tonia that Legacy was worth 1,148,270. The documents submitted by Tonia included her financial declaration, a financial statement she had printed shortly after the separation, and a balance sheet for Legacy. *Lewis*, 54 So. 3d at 237-38. Because Tonia had admitted at trial that the valuations of Legacy in all three documents were inaccurate, the Court of Appeals found that the chancellor had manifestly erred by relying on them to value Legacy. *Id.* at 239. The Court of Appeals remanded for the chancellor to

> value Legacy using: (1) any real property owned by Legacy; (2) any other property owned by Legacy, such as vehicles or tools; (3) goodwill equity, if any, attributable to Legacy; and (4) any improvements that Legacy owns that are made to real property owned by parties other than Legacy. In making these determinations, the chancery court should consider "that price at which [the business] would change hands between a willing buyer and a willing seller when the former is not under any compulsion to buy and the latter is not under any compulsion to sell, both parties having reasonable knowledge of the relevant facts." *Singley v. Singley*, 846 So. 2d 1004, 1011(¶ 18) (Miss. 2002).

*Id.* at 240. The Court of Appeals found that the chancellor had made three other errors in the equitable distribution, including: (1) classifying the Swamp Road property as marital; (2) classifying the St. Martin property as marital; and (3) including Lot 13 of Hickory Hills, which no longer was owned by the parties. *Id.* at 243-44. In all other respects, the Court of Appeals rejected Drake's arguments and affirmed the chancellor's equitable distribution. *Id.* The Court of Appeals stated:

> On remand, the chancellor must revalue Legacy using all relevant data, rather than relying on Tonia's admittedly inaccurate exhibits. The chancellor must also consider whether the Swamp Road acreage is marital property in light of Tonia's statements regarding the property, and whether the St. Martin property is marital property in light of the 1031 exchange. After considering all of these things, the chancellor must address the proper value of the marital estate and then make an equitable distribution of the marital estate, taking into account the new value of Legacy and any other property which has undergone a change

4

in marital status. In so doing, the chancellor must not consider Lot 13 of Hickory Hills, which both parties agreed is no longer owned by either party.

*Id.*

¶6. Tonia filed a petition for certiorari, arguing that the Court of Appeals had erred in its remand order by requiring the chancellor to include goodwill in the valuation of Legacy. *Lewis v. Lewis*, 54 So. 3d 216, 217 (Miss. 2011). Based on our precedent, we agreed, holding that "[g]oodwill is simply not property; thus it cannot be deemed a divisible marital asset in a divorce action." *Id.* at 218 (quoting *Singley*, 846 So. 2d at 1011). This Court remanded for the chancellor to "cause the marital assets to be reevaluated consistent with the instructions of this opinion and those of the Court of Appeals, with the exception of considering goodwill equity." *Id.* at 219. Due to the complexity of the issues, we also encouraged the appointment of a special master to assist with the valuation of Legacy. *Id.* at 218.

¶7. During the appellate process, on October 8, 2008, Drake filed a motion for modification as to child support and custody, and an amended motion on June 3, 2009. Drake complained that, a few months after the divorce, Tonia had moved to Idaho with her new husband and the two youngest children, Madison and Caullin. Drake also asserted that Tonia had sent the oldest child, Jordan, to live with Tonia's sister in Apopka, Florida. Drake requested that Tonia be held in contempt because she had moved out-of-state and had allowed Jordan to move without his agreement. Drake requested custody, or alternatively, extension of his visitation and an order for Tonia to pay for transportation costs. Drake also requested termination of rehabilitative alimony due to Tonia's remarriage two months after the divorce and modification of college costs to provide that both parents share college

expenses equally. He also requested modification of child support due to his decreased income.

¶8. On February 9, 2010, Tonia filed a countermotion for contempt and modification. She argued that Drake should be held in contempt because he was in arrears for nonpayment of child support in the amount of $5,414.26. Tonia requested her attorney's fees incurred in the filing of the motion for contempt. She also asserted that Drake was in arrears for nonpayment of certain medical expenses as ordered by the court and for nonpayment of some of Jordan's college expenses. Tonia argued that Drake's child support should be increased due to the increased needs of the children. She also claimed that Drake had caused to be issued a K-1 to Tonia for 2008 showing tax liabilities for Legacy, and that Drake should be held responsible for all tax liabilities arising out of Legacy.

*A. Equitable Distribution and Alimony*

¶9. The chancellor held a hearing on the issues raised by the remand and the motions for modification and contempt. No special master was appointed to assist the chancellor in valuing Legacy. Tonia put on no evidence concerning Legacy's value. Drake testified that he had closed Legacy in August 2008 and transferred some of its interests to a sole proprietorship called Legacy Builders. Drake testified that Legacy had a negative value. He presented the testimony of certified public accountant Doris Triplett, who testified that she had closed out Legacy's 2008 taxes. Triplett testified that she never had performed an audit of Legacy and never had determined what it owned. But Triplett testified that Legacy had assets on its books that actually were owned by Tonia and Drake personally, rather than by

6

Legacy. Some of these assets included the Lewises' personal home and several of the properties on which Legacy was building homes. These assets had been included in the valuations of Legacy provided by Tonia at the divorce trial that were relied on by the chancellor, but rejected by the Court of Appeals. On remand, neither party provided title documentation showing that any real property had been titled to Legacy. Drake testified that Legacy had owned no real property.

¶10.    The chancellor made the following findings regarding the valuation of Legacy:

> To all intents and purposes, Legacy appears not to have been run as a true corporate entity, but as an alter ego of the parties out of which they paid most of their personal expenses. They commingled monies and worked back and forth between the trust and Legacy Holdings, Inc. [Tonia] also worked on the trust construction, acting in the capacity of an interior decorator, choosing paints, carpet and countertops. Within the business of Legacy Holdings, Inc., [Tonia] assisted in handling some of the bookwork and bills.
> As to valuing Legacy Holdings, Inc., [Drake] put Doris Triplett, a Certified Public Accountant, on the stand. Ms. Triplett prepared the final tax returns for Legacy Holdings, Inc. Legacy Holdings, Inc., as mentioned above, is one of the marital assets for which this Court must determine what a willing buyer would pay to a willing seller, also under no compulsion. Having heard testimony in 2007 and again in 2012, the Court is once again left with no firm basis on which to form an opinion.
> The testimony struck down by the remand dealt with the value of Legacy Holdings, Inc., as established through the use of Quickbooks and Quicken documents. These Quickbooks and Quicken documents showed assets that were a mixture of personal and corporate assets, assets that may or may not have been sold, with no supporting schedules or documentation.
> In the 2012 hearing, Doris Triplett testified that the final tax returns of Legacy Holdings, Inc., and [Drake] were admittedly based upon information that was incomplete and without supporting documentation. She further testified that good practice required that she amend the 2007 and earlier returns to reflect the correct information regarding assets, liabilities, and ownership, but she did not do so. After the trial in 2007, [Drake] sought an extension of time after both sides had ostensibly rested in order to obtain the testimony of his Certified Public Accountant, Scott McElroy. The Court granted that request. [Drake] never provided this information. He has still failed to provide

any information on which to base any conclusion as to the worth of Legacy Holdings, Inc.

The tax returns show that at the beginning of 2007, Legacy Holdings, Inc. had $988,758.00 in work in progress. According to those tax returns, it held unimproved property worth $1,086,250.00. At the end of the year, it had work in progress of $1,033,556.00, unimproved property valued at $1,032,906.00, and receivables of $65,000.00. The return showed gross receipts of $2,035,930.00. The return showed net loss of $142,787,00.

In August, 2008, Legacy Holdings, Inc. was liquidated. At that time, its returns prepared by Triplett showed gross receipts of $1,971,172.00 and cash on hand of $82,465.00, and total assets of $2,322,505.00. Those assets and work in progress were transferred to Drake Lewis d/b/a Legacy Builders. The returns show Legacy Holdings, Inc., had a net loss of $448,521.00.

In late 2008, Drake Lewis began doing business as Legacy Builders.

By the end of 2008, Drake d/b/a Legacy Builders had gross receipts of $90,361.00, a gross income of $15,168.00, and a net loss of $7,953.00.

The 2009 returns show that Drake Lewis d/b/a/ Legacy Builders had gross receipts of $1,134,686.00, gross income of $44,861.00, and net income of $18,953.00.

Triplett's testimony indicated that at the closing of Legacy Holdings, Inc., there was a capital loss carryover of $314,187.00, out of which [Drake] could deduct $3,000.00 per year on passive income until the funds were exhausted. He also had a net operating loss which he could offset against future ordinary income without the $3,000.00 limit per year.

What cannot be ignored, however, is that there are not title documents showing that Legacy Holdings, Inc. had any assets other than these accounts receivable, which in essence show income but no assets. There are no real or personal properties. There is no testimony upon which this Court can place a valuation other than a stab in the dark at goodwill, a door which has been definitively closed by the Supreme Court. And after all, what is goodwill but income earning capacity?

The Court finds that if there is any value to Legacy Holdings, Inc., that the same should be distributed to [Drake] as his own; that any liabilities are to be distributed to [Drake], and that he hold harmless and indemnify [Tonia] of any and all tax liability for which she might be "saddled" based upon [Drake's] post-divorce 2008 Legacy Holdings, Inc., return.

The chancellor also found that "Legacy Holdings, Inc. is valueless, outside of accounts receivable."

8

¶11.    The chancellor revisited the holdings on Swamp Road, St. Martin, and Lot 13 Hickory Hills, as directed by the Court of Appeals. In the original decision, the chancellor had valued Swamp Road at $30,000, deemed Swamp Road to be marital, and awarded it to Drake. On remand, Drake testified that his father had purchased Swamp Road and placed it trust for Drake and his sister, with a one-half interest to each. Because the Swamp Road property had been gifted to Drake outside the marital estate, the chancellor found it was nonmarital.

¶12.    The chancellor recognized the Court of Appeals' holding that Lot 13 Hickory Hills should not have been included in the marital estate because it had been traded in a like-kind exchange for the St. Martin property. Accordingly, the chancellor removed Lot 13 Hickory Hills from the property division and determined the status of St. Martin. The chancellor found that, because Lot 13 Hickory Hills had been gifted to Drake by his father, and then Lot 13 Hickory Hills was traded in a 1031 like-kind exchange for St. Martin, St. Martin was Drake's separate property. The chancellor noted that nothing indicated that Tonia ever had any interest in either Lot 13 Hickory Hills or St. Martin.

¶13.    The chancellor made the following findings regarding the equitable distribution and alimony:

> In the Judgement entered by this Court on January 11, 2008, Tonia was awarded assets totaling $865,733.00 . . . and Drake was awarded assets totaling $1,807,882.00. However, in light of the changes made by the Court *supra* with regard to Legacy Holdings, Inc., the Swamp Road property, and the St. Martin property, the Court must amend the distribution. After removing the Swamp Road and St. Martin properties from the marital estate and re-valuing

9

Legacy Holdings as directed by the Mississippi Supreme Court, the Court will revisit the applicable *Ferguson*[2] and *Armstrong*[3] factors.

In light of the changes made, Tonia Lewis Pagel was awarded $665,733.00 in assets (by removing the St. Martin property from her distribution). Drake Lewis was awarded $649,100.00 in assets (by removing Hickory Hills Lot 13 from his distribution and after concluding that Legacy Holdings, Inc., is valueless, outside of accounts receivable), but his individual assets are increased by $200,000.00 since the St. Martin property is non-marital. Thus the Court will re-visit the factors in both *Ferguson* and *Armstrong* which deal with property brought into the marriage or acquired outside the marital estate. The Court finds that all other *Ferguson* and *Armstrong* factors the Court previously analyzed remain the same.

*Ferguson* directs the Court to evaluate, among other factors, the value of assets not ordinarily subject to distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse. This Court, in its original decision, carefully weighed all the factors, but this factor has been affected by the reclassification of assets. Drake Lewis was gifted by his father property valued at approximately $210,000.00. The court finds that after division of the property, Drake's assets, including his non-marital assets, outweigh Tonia's assets to the extent that some sort of lump sum alimony must be awarded.

As for alimony, the Court must re-visit the *Armstrong* factor regarding needs and assets of the parties in light of the non-marital property awarded to Drake Lewis. The Court originally awarded Tonia $24,000.00 in rehabilitative alimony, which Drake seeks to modify. . . . As discussed in the prior paragraph, Drake has assets outside the marital estate of approximately $210,000.00. Tonia has no outside assets. The Court finds that in light of all *Ferguson* and *Armstrong* factors, and in order to equitably divide the property, Drake Lewis shall pay Tonia Lewis Pagel $100,000.00 in lump sum alimony.

*B. Termination of Rehabilitative Alimony, Modification of Child Support, Contempt, and Attorney's Fees*

¶14. In a separate order, the chancellor addressed the parties' dueling motions for modification and contempt. The chancellor granted Drake's request to terminate rehabilitative alimony due to Tonia's remarriage and terminated rehabilitative alimony as of

---

[2] ***Ferguson v. Ferguson***, 639 So. 2d 921 (Miss. 1994).

[3] ***Armstrong v. Armstrong***, 618 So. 2d 1278, 1280 (Miss. 1993).

10

the date of Tonia's remarriage. The chancellor found that, because Tonia's circumstances had changed since the divorce, Tonia should be ordered to share one-half of the college expenses. The chancellor denied Drake's request for a reduction in child support based on a reduction in income. First, the chancellor found that, because Drake had modified his child support in September 2009 to $849 per month, he was in arrears for nonpayment of child support. Observing that the income Drake had reported on his latest Rule 8.05 financial statement was only slightly less than what Drake had reported at the trial, the chancellor found that Drake had not shown a material change in circumstances warranting a downward modification. Noting Tonia's agreement that Drake be given extra visitation, the chancellor awarded Drake an extra week of summer visitation. The chancellor denied Drake's motion for contempt, finding that Tonia's conduct in moving the children did not rise to the level of contempt.

¶15.    The chancellor found that, because Tonia had presented no evidence of the children's increased needs, her motion for a modification to increase child support should be denied. The chancellor granted Tonia's motion for contempt for Drake's admitted failure to pay child support in the amount ordered by the chancery court. He found that Drake was in arrears in the amount of $28,589.39 and ordered him to repay Tonia $500 per month. The chancellor denied Tonia's other allegations of contempt. Finally, the chancellor awarded Tonia $5,000 in attorney's fees related to the contempt filing for unpaid child support.

## STANDARD OF REVIEW

¶16.    This Court will not disturb the findings of a chancellor in domestic relations matters unless the chancellor's decision was manifestly wrong, clearly erroneous, or applied an

erroneous legal standard. *Carney v. Carney*, 112 So. 3d 435, 437-38 (Miss. 2013) (quoting *Ferguson v. Ferguson*, 639 So. 2d 921, 930 (Miss. 1994)). "Chancellors are afforded wide latitude in fashioning equitable remedies in domestic relations matters, and their decisions will not be reversed if the findings of fact are supported by substantial credible evidence in the record." *Gutierrez v. Gutierrez*, 153 So. 3d 703, 707 (Miss. 2014) (quoting *Henderson v. Henderson*, 757 So. 2d 285, 289 (Miss. 2000)). We review questions of law de novo. *Gutierrez*, 153 So. 3d at 707.

## DISCUSSION

I.     WHETHER THE CHANCELLOR ERRED IN THE EQUITABLE DISTRIBUTION ON REMAND.

¶17.    When dividing a couple's assets, a chancellor initially must classify those assets as marital or separate property. *Fisher v. Fisher*, 771 So. 2d 364, 447 (Miss. 2000). Then, the chancellor must proceed with equitable distribution guided by the factors set forth in *Ferguson v. Ferguson*, 639 So. 2d 921, 928 (Miss. 1994). Those factors include:

> 1. Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows:
>
> a. Direct or indirect economic contribution to the acquisition of the property;
>
> b. Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage; and
>
> c. Contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets.
>
> 2. The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise.

3. The market value and the emotional value of the assets subject to distribution.

4. The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;

5. Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;

6. The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;

7. The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity; and,

8. Any other factor which in equity should be considered.

*Id.* at 928. If, after the equitable distribution of the marital estate, one spouse is left with a deficit, then the chancellor should consider alimony based on the value of nonmarital assets. *Gutierrez*, 153 So. 3d at 711 (citing *Lauro v. Lauro*, 847 So. 2d 843, 848 (Miss. 2003)).

¶18. Drake argues that the chancellor committed several errors in the equitable distribution. First, Drake argues that the chancellor erred as a matter of law by failing to make a detailed analysis of all the *Ferguson* factors on remand. In the judgment on remand, the chancellor discussed only the *Ferguson* factors pertaining to separate property. The chancellor specifically articulated a finding that his analysis of all other *Ferguson* factors remained the same.

¶19. This Court has reversed and remanded a property division for failure to make specific findings of fact and conclusions of law concerning the *Ferguson* factors. *Fisher v. Fisher*,

771 So. 2d 364, 367 (Miss. 2000). Here, the Court of Appeals ordered the chancellor to "make an equitable distribution of the marital estate, taking into account the new value of Legacy and any other property which has undergone a change in marital status." *Lewis*, 54 So. 3d at 244. The judgment after remand indicates that the chancellor reconsidered all of the *Ferguson* factors and that his findings on the factors not specifically discussed remained the same. It is clear that the chancellor performed a new equitable distribution on remand, and we find that the chancellor did not err by incorporating by reference some of his findings from the divorce judgment.

¶20.    Drake appears to argue that the chancellor erred in his valuation of Legacy. Drake avers that the chancellor erred by including Legacy as "a valued asset." He contends that he proved that Legacy had no value. This argument is perplexing, because, in the award of Legacy to Drake, the chancellor clearly stated that Legacy had no value except for accounts receivable. Because the chancellor found Legacy had no value, the chancellor subtracted the previously determined value of Legacy from Drake's allotment of assets in the recalculated equitable distribution. Drake points to no specific error in the chancellor's valuation of Legacy, and this Court finds no error.

¶21.    Drake also argues that he showed that Tonia's submission, at the divorce trial, of the three exhibits deemed unreliable by the Court of Appeals was an attempt to mislead the chancellor that should have weighed against Tonia in the equitable distribution. But Tonia testified that, when she submitted the exhibits, she believed them to be true. The chancellor

14

was within his discretion in rejecting Drake's contention that Tonia had attempted to mislead the chancery court.

¶22.    Next, Drake argues that the chancellor erred by classifying the proceeds from the parties' sale of the Richland Road property as marital. After the separation, Drake and Tonia sold their interests in the Richland Road property and signed a purchase agreement stating that the sale proceeds of $265,624 would be divided equally between them and would be the separate property of each seller. In the divorce judgment, the chancellor found that the sale proceeds were marital. The judgment stated that $132,812 was awarded to Tonia, but failed to make an award of the remaining $132,812. In an order granting Tonia's motion to alter and amend the divorce judgment, the chancellor awarded the entire $265,624 to Tonia and amended Tonia's total award to $865,733 to include the entire proceeds from the sale of Richland Road. But in a subsequent order denying in part Drake's motion to alter or amend the judgment, the chancellor failed to recognize this holding, stating that "[a]s to the proceeds of Richland Road, the Court notes that the parties had equally divided those proceeds, and that each had received a distribution of some $132,000.00 each. It is only this amount that the Court noted in its distribution to Tonia." That statement was incorrect, because the chancellor already had amended the judgment to provide that the entire $265,624 was Tonia's. But in the order on modification and contempt, the chancellor clarified that the entire $256,624 was Tonia's according to the order altering and amending the judgment.

¶23.    Drake argues that, because the parties had agreed to share the Richland Road proceeds equally as their separate property, the chancellor erred by classifying the proceeds as marital.

15

Because Drake did not include this issue in his appeal from the divorce judgment, this issue implicates the law-of-the-case doctrine. This Court has stated that:

> The doctrine of the law of the case is similar to that of former adjudication, relates entirely to questions of law, and is confined in its operation to subsequent proceedings in the case. Whatever is once established as the controlling legal rule of decision, between the same parties in the same case, continues to be the law of the case, so long as there is a similarity of facts. This principle expresses the practice of courts generally to refuse to reopen what has previously been decided. It is founded on public policy and the interests of orderly and consistent judicial procedure.

*Moeller v. Am. Guarantee & Liab. Ins. Co.*, 812 So. 2d 953, 960 (Miss. 2002). "[A] mandate issued by this Court 'is binding on the trial court on remand, unless the case comes under one of the exceptions to the law of the case doctrine . . . , such as 'material changes in evidence, pleadings or findings' . . . . or the need for the Court to 'depart from its former decision' 'after mature consideration' so that 'unjust results' will not occur . . . .'" *Id.* (citations omitted). Here, the Court of Appeals reviewed the equitable distribution and remanded with specific instructions to revalue Legacy, reclassify two properties, remove Lot 13 Hickory Hills, and equitably divide the assets. *Lewis*, 54 So. 3d at 243-44. Otherwise, the Court of Appeals affirmed the property division. *Id.* Accordingly, on remand, the chancellor revalued Legacy, reclassified the two properties, removed Lot 13 Hickory Hills, and adjusted the equitable division in light of those specific changes after considering the *Ferguson* factors. Because the classification of the Richland Road proceeds was outside the scope of the Court of Appeals' instructions on remand, the chancellor properly did not consider the issue. This is because the chancellor's previous holding that the Richland Road property was marital was affirmed by the Court of Appeals and had become the law of the case.

16

¶24. Drake also argues that the chancellor failed to consider the tax consequences attendant to Legacy as required by *Ferguson* in the judgment on remand. Contrary to Drake's argument, the chancellor specifically addressed the tax consequences of awarding Legacy to Drake. The chancellor recognized that Drake had a capital loss carryover of $314,187 from the closing of Legacy that he could use to offset against future ordinary income. The chancellor held that Drake should indemnify Tonia of all tax liability from Legacy based upon the 2008 tax return. Because the chancellor did consider the tax consequences of distributing Legacy to Drake, Drake's argument fails.

¶25. Finally, Drake argues that the chancellor abused his discretion by awarding Tonia substantially more assets. After determining that Legacy had no value, reclassifying Swamp Road and St. Martin as Drake's separate property, and removing Lot 13 Hickory Hills, the chancellor revisited the *Ferguson* factors. The chancellor removed St. Martin from Tonia's distribution, leaving her with $665,733 in assets. The chancellor removed Lot 13 Hickory Hills from Drake's distribution and valued Legacy at zero, leaving Drake with $649,100 in assets. Otherwise, the equitable distribution of assets remained the same. Then, the chancellor addressed the value of assets not subject to distribution, finding that this factor had been affected by the redistribution of assets. The chancellor found that, because Drake had separate property gifted by his father valued at $210,000, his assets outweighed Tonia's to the extent that lump-sum alimony should be awarded. The chancellor found Tonia had no separate assets and that, "in light of all the *Ferguson* and *Armstrong* factors, and in order to equitably divide the property," Drake was to pay Tonia $100,000 in lump-sum alimony.

¶26. Contrary to Drake's argument, Tonia did not receive substantially more assets. Including the lump-sum alimony award to Tonia and Drake's separate property of $210,000, the distribution left Drake with $759,100 and Tonia with $755,733. Drake argues that he received only $462,545 in assets, leaving Tonia with substantially more assets, because the values of certain assets changed after the divorce judgment. In his calculation, Drake subtracts the $156,555 loan to Legacy and the $30,000 Swamp Road property from his share. Drake argues that, because he never received repayment of the $156,555 loan to Legacy after Legacy's dissolution, the loan should not have been included in the property division. He also complains that, after the divorce, Tonia sold property she was awarded for more than the amount of her equity in the property.

¶27. It is well-established that "an equitable division of property does not necessarily mean an equal division of property." *Chamblee v. Chamblee*, 637 So. 2d 850, 863-64 (Miss. 1994). "[F]airness is the prevailing guideline in marital division." *Lowery v. Lowery*, 25 So. 3d 274, 285 (Miss. 2009) (quoting *Ferguson*, 639 So. 2d at 929). Here, the chancellor's division of the property was approximately equal. Drake's argument that he received substantially less than Tonia relies on circumstances that occurred after the divorce judgment. However, the date for determination of equitable distribution is, at the earliest, the date of separation, or, at the latest, the date of divorce. *Lowery*, 25 So. 3d at 285. Additionally, an order of equitable division is a nonmodifiable judgment. *East v. East*, 493 So. 2d 927, 931 (Miss. 1986). Therefore, when the Court of Appeals remanded for the chancellor to revisit

18

the equitable distribution, the chancellor properly redetermined the equitable distribution as of the date of the divorce.

II. WHETHER THE CHANCELLOR ERRED IN AWARDING LUMP-SUM ALIMONY.

¶28. In the divorce judgment, the chancellor reviewed Tonia's request for periodic alimony under the factors from *Armstrong v. Armstrong*, 618 So. 2d 1278, 1280 (Miss. 1993).The chancellor awarded Tonia $24,000 in rehabilitative periodic alimony. In the order on modification and contempt, the chancellor granted Drake's request to terminate rehabilitative alimony as of the date of Tonia's remarriage. In the judgment after remand, the chancellor redetermined the equitable distribution and addressed alimony. The chancellor found that, due to the fact that Tonia had no separate assets and Drake had a separate estate valued at $210,000, Drake should pay Tonia $100,000 in lump-sum alimony.

¶29. "Lump-sum alimony has been described as 'a means of adjusting financial inequities that remain after property division.'" *Rogillio v. Rogillio*, 57 So. 3d 1246, 1250 (Miss. 2011) (quoting Deborah H. Bell, *Mississippi Family Law* § 9.02[2][a][ii] (2005)). Drake argues that, in awarding lump-sum alimony, the chancellor erred by failing to apply *Cheatham v. Cheatham*, 537 So. 2d 435, 438-40 (Miss. 1988), which predates *Ferguson* and sets out factors for determining whether lump-sum alimony is appropriate. This Court has held that, when "lump-sum alimony is awarded as a mechanism to equitably divide the marital assets, then chancellors may conduct their analysis under the *Ferguson* factors." *Davenport v. Davenport*, 156 So. 3d 231, 241 (Miss. 2014) (citing *Haney v. Haney*, 907 So. 2d 948, 955 (Miss. 2005)). This is because "the *Cheatham* factors are really nothing more than an earlier

19

version of the *Ferguson* factors, and both are used for the same purpose." *Haney*, 907 So. 2d at 954. But when the chancellor awards lump-sum or periodic alimony after equitably dividing the estate, the chancellor should consider the *Armstrong* factors. *Davenport*, 156 So. 2d at 241. Here, the chancellor, relying on *Armstrong*, awarded Tonia $100,000 in lump-sum alimony after equitably dividing the marital estate. The chancellor properly relied on *Armstrong* and not *Cheatham* in making the lump-sum alimony award.

¶30.    Drake also argues that the chancellor manifestly erred by awarding lump-sum alimony because Tonia received more marital assets than Drake in the equitable distribution. As previously stated, Tonia and Drake received substantially the same amount of marital assets, plus Drake had separate property totaling $210,000. The award of $100,000 in lump-sum alimony left the parties with substantially the same amount of assets. "Whether or not to award alimony and the amount of alimony is largely within the discretion of the chancellor." *Parsons v. Parsons*, 678 So. 2d 701, 702 (Miss. 1996). This Court finds that the chancellor was within his discretion in determining that, considering the needs and assets of the parties, Tonia should be awarded lump-sum alimony.

III.    WHETHER THE CHANCELLOR'S DECISIONS ON MODIFICATION OF CHILD SUPPORT AND CONTEMPT WERE MANIFESTLY ERRONEOUS.

¶31.    The chancellor denied Drake's request for a downward modification of child support based on his reduced income. The chancellor denied the request upon a finding that Drake's income was substantially the same as at the time of the divorce. The chancellor found that

20

Tonia's remarriage and changed circumstances warranted a modification for her to share in college expenses equally.

¶32.    We first observe that the chancellor found that Drake was in arrears. The doctrine of unclean hands prevents a payor from obtaining a modification if he is in arrears unless the payor proves an inability to pay. ***Lane v. Lane***, 850 So. 2d 122, 126 (Miss. 2002). However, the entry of a judgment for arrearages cleanses the payor's hands and revives the matter of modification. ***Id.*** Because the chancellor entered a judgment for arrearages, the chancellor did not err by reviewing the merits of Drake's request for modification.

¶33.    Drake argues that the chancellor erred in denying his request for a downward modification of child support. First, he argues that the chancellor departed from the statutory guidelines without adequate explanation. Drake correctly recognizes that a chancellor must reference the child-support guidelines contained in Mississippi Code Section 43-19-101(1) (Rev. 2009) in awarding child support. ***Wallace v. Bond***, 745 So. 2d 844, 847 (Miss. 1999). An award that departs from the guidelines must be supported by specific findings that the application of the guidelines would be unjust or inappropriate in the particular case. Miss. Code Ann. § 43-19-103 (Rev. 2009). However, in a child-support modification decision, the chancellor first must find that a material change in circumstances warrants a modification before determining the amount of child support with reference to the guidelines. ***Wallace***, 745 So. 2d at 848. Because the chancellor found no material change in circumstances, the chancellor did not reach the issue of setting the amount of child support. And Drake cannot now complain of the amount of child support awarded in the divorce judgment, because he

did not appeal that issue; this matter is before this Court on Drake's appeal from the order on modification and contempt.

¶34. Second, Drake argues that the chancellor erred by imputing income to him and failing to recognize the reduction in income Drake suffered because his loan to Legacy was not repaid. The divorce judgment set child support at 22% of his net income of $7,300 per month, rather than his reported net income of $4,730 per month. As discussed in the Court of Appeals' opinion, the chancellor found Drake's income to be $7,300 per month after adding his monthly draws from the $156,555 Legacy loan repayment to his $4,730 income. Before the Court of Appeals, Drake argued that the chancellor had erred by counting the loan repayment both as an asset and as income. *Lewis*, 54 So. 3d at 243. The Court of Appeals found no error, stating "[w]e know of no provision of the law that states that income can only be considered if it is achieved from non-diminishing assets . . . ." *Id.* But the Court of Appeals cautioned that "the chancellor's treatment of the loan will most likely mean that the amount of child support will have to be adjusted in the future, once Drake has recouped the value of the loan." *Id.* at n.2.

¶35. In the modification proceedings, Drake and his tax preparer testified that Drake never recouped the value of the loan due to the closure of Legacy in August 2008, after which he received no further repayment and "wrote off" approximately $156,000. This evidence was undisputed. The chancellor found from Drake's current 8.05 financial statement that Drake's income of $4,613.04 per month was substantially the same as the $4,730 per month he had reported in the divorce proceedings. The chancellor also stated that "[e]ven if Drake's

22

income has dropped since 2007, he is capable of earning a substantial income comparable to that which he earned at that time and he has substantial assets, and the Court finds that the request to modify child support should be denied." The chancellor noted his finding in the divorce judgment that Drake had investments that provided a source of income.

¶36.   The chancellor failed to address the fact that Drake's monthly income no longer included repayments from the Legacy loan. We find that this was manifest error. As the Court of Appeals recognized, the deduction of the loan repayment from Drake's income may necessitate a modification of child support. We are cognizant that, ordinarily, the fact that the reduction in income was foreseeable at the time of the divorce would bar modification. *Shipley v. Ferguson*, 638 So. 2d 1295, 1298 (Miss. 1994). Nonetheless, due to the chancellor's inclusion of the loan, a finite resource, in determining Drake's adjusted gross income, we find that it would be inequitable to preclude modification under the circumstances. Therefore, we reverse and remand for the chancellor to revisit the issue of modification due to Drake's reduction in income due to the end of the loan repayment. Any imputation of income should be supported by findings of fact. *See Gray v. Gray*, 745 So. 2d 234, 237 (Miss. 1999).

¶37.   Drake also argues that equitable considerations demand that the modification of college expenses and any further modifications ordered by the chancellor should be retroactive to the date that the Court of Appeals remanded the case, or to the original trial date in October 2010. This issue is without merit. It is well-established that, even if a petition for modification is pending, child-support payments vest when due and, once vested, cannot

23

be forgiven or modified. *McBride v. Jones*, 803 So. 2d 1168, 1170 (Miss. 2002). Therefore, any modification granted by the chancellor must be prospective only.

IV. WHETHER THE CHANCERY COURT ERRED BY FINDING DRAKE IN CONTEMPT AND AWARDING TONIA ATTORNEY'S FEES.

¶38. The chancellor held Drake in contempt because he willfully had reduced his child support payments without leave of court and owed Tonia $28,589.39. Drake admits that he willfully reduced child support. He argues that the chancellor erred by finding him in contempt because he was entitled to setoffs for (1) the $20,000 in rehabilitative alimony that he paid before the modification of rehabilitative alimony and (2) college expenses for Jordan that he paid in excess of what had been ordered in the divorce judgment. Essentially, Drake asserts that the chancellor's modification of the rehabilitative alimony award purged his contempt for failing to pay child support.

¶39. This Court will not reverse the chancellor's finding of contempt unless the decision was manifestly wrong. *Gutierrez*, 153 So. 3d at 713. We find that the chancellor was not manifestly wrong in holding Drake in contempt. "The purpose of civil contempt is to compel parties to obey the orders of the court." *Id.* "A contempt citation is proper only when the contemner has wilfully and deliberately ignored the order of the court." *Gaiennie v. McMillin*, 138 So. 3d 131, 136 (Miss. 2014) (quoting *Mizell v. Mizell*, 708 So. 2d 55, 64 (Miss. 1998)). By unilaterally reducing child support, Drake willfully ignored an order of the court. The $20,000 that Drake overpaid in rehabilitative alimony was allocated as alimony,

24

not child support. We find that chancellor was not manifestly wrong in finding Drake in contempt.

¶40. Drake also argues that the chancellor erred by awarding Tonia $5,000 in attorney's fees associated with bringing the contempt action. He contends that the award was erroneous because the chancellor did not consider the factors announced in *McKee v. McKee*, 418 So. 2d 764, 767 (Miss. 1982). However, the Court of Appeals has held that "the establishment of the *McKee* factors [is] not necessary for a contemnee to recover attorney's fees related to pursuing actions where a contemnor has wilfully violated a lawful order of the court. To hold otherwise would cause no peril to those restrained from certain conduct if they violate the orders of a court." *Mixon v. Mixon*, 724 So. 2d 956, 964 (Miss. Ct. App. 1998). The chancellor's failure to consider the *McKee* factors was not error.

**CONCLUSION**

¶41. This Court affirms the chancellor's findings on the value of Legacy, equitable distribution, and lump-sum alimony. But we reverse the chancellor's denial of Drake's motion to modify child support and remand for the chancellor to consider the impact of the removal of the loan repayment from Drake's income. We affirm the finding of contempt and award of attorney's fees to Tonia.

¶42. **AFFIRMED IN PART, REVERSED IN PART, AND THE CASE IS REMANDED.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS, KING AND COLEMAN, JJ., CONCUR. PIERCE, J., NOT PARTICIPATING.**

25