# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-00534-COA

**CRIEG ALEN OSTER**                                   APPELLANT/CROSS-
                                                       APPELLEE

v.

**CONSUELO MORENO RATLIFF**                            APPELLEE/CROSS-
                                                       APPELLANT

| | |
|---|---|
| DATE OF JUDGMENT: | 04/01/2014 |
| TRIAL JUDGE: | HON. EDWARD E. PATTEN JR. |
| COURT FROM WHICH APPEALED: | LINCOLN COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | M. JUDITH BARNETT |
| ATTORNEYS FOR APPELLEE: | GARY L. HONEA |
| | MICHAEL V. RATLIFF |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| TRIAL COURT DISPOSITION: | FOUND THAT TWO OF THE PARTIES' CHILDREN WERE NOT LEGALLY EMANCIPATED ON JUNE 1, 2012, AND THAT APPELLANT/CROSS-APPELLEE WAS NOT IN WILLFUL CONTEMPT; AWARDED APPELLEE/CROSS-APPELLANT $2,500 IN ATTORNEY'S FEES; AND ORDERED APPELLEE/CROSS-APPELLANT TO PAY ONE-HALF OF THE COSTS OF A VEHICLE DRIVEN BY ONE OF THE MINOR CHILDREN |
| DISPOSITION: | AFFIRMED IN PART AND REVERSED AND REMANDED IN PART – 04/19/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., BARNES AND ISHEE, JJ.**

**IRVING, P.J., FOR THE COURT:**

¶1.     Crieg Oster appeals, and his ex-wife, Consuelo Ratliff, cross-appeals, from the

judgment of the Chancery Court of Lincoln County that disposed of issues presented in post-

divorce petitions for citations of contempt filed by them against each other. On appeal, Crieg raises one issue: whether the chancellor erred in finding that his and Consuelo's children, Maria and Patrick Oster, were not legally emancipated on June 1, 2012. On cross-appeal, Consuelo asserts that the chancellor erred in failing to (1) find Crieg in contempt of court; (2) award her sufficient attorney's fees; and (3) award her interest on the judgment. She also asserts that the chancellor erred, under Rule 8(c) of the Mississippi Rules of Civil Procedure, in allowing Crieg to argue that his failure to meet his child-support obligations was a result of Maria's and Patrick's legal emancipation. Also, she insists that the chancellor erred in requiring her to pay one-half of the costs of a car provided to Maria by Crieg.

¶2.    We find that the chancellor did not err in (1) allowing Crieg to pursue his emancipation argument, (2) failing to find Crieg in contempt, (3) awarding Consuelo only $2,500 in attorney's fees, and (4) ordering Consuelo to pay one-half of the costs of the car that Crieg provided for Maria. However, we find that the chancellor erred in not awarding Consuelo post-judgment interest on the award. Therefore, we affirm in part, reverse in part, and remand for the assessment of post-judgment interest.

**FACTS**

¶3.    Crieg and Consuelo have four children: Marcus Oster, born May 22, 1983; Nicholas Oster, born April 11, 1988; Patrick Oster, born September 6, 1991; and Maria Oster, born May 27, 1994. On April 20, 2007, Crieg and Consuelo were divorced, and in the judgment of divorce, the chancery court awarded Consuelo primary physical custody of Patrick and

2

Maria.

¶4.    On March 11, 2013, after Crieg and Consuelo had made extrajudicial arrangements concerning child support and child custody, Crieg filed a petition for a citation of contempt against Consuelo.  In his petition, Crieg alleged that Consuelo had failed to pay one-half of the costs of the vehicles driven by Maria and Patrick, one-half of their college costs and expenses, and child support.  Crieg also alleged that Consuelo had failed to provide him with documentation reflecting the children's medical expenses.  On June 10, 2013, Consuelo filed her responsive pleading, in which she petitioned the chancery court for a citation of contempt against Crieg.  She alleged that Crieg had failed to meet his child-support obligations and payment of one-half of the children's medical expenses.

¶5.    At the hearing in this matter, the chancellor, over Consuelo's objection, allowed Crieg to argue that his failure to meet his child-support obligations was due, in large part, to the fact that Maria and Patrick were legally emancipated on June 1, 2012, when they moved out of Consuelo's house and into an apartment.  After the hearing, the chancellor found that (1) Maria and Patrick were not emancipated on June 1, 2012; (2) Crieg was not in contempt; and (3) Consuelo was required to pay one-half of the costs of the car provided to Maria by Crieg for the time that Maria used the car as her only source of transportation.  The chancellor also found that Consuelo was entitled to back child support for Maria and Patrick and future child support for Maria.  The chancellor further found that Consuelo was entitled to $2,500 in attorney's fees due to Crieg's discovery violations.

**DISCUSSION**

¶6. The standard of review in domestic-relations cases is well settled: "[Appellate courts] will not disturb the findings of a chancellor in domestic[-]relations matters unless the chancellor's decision was manifestly wrong [or] clearly erroneous[] or [unless the chancellor] applied an erroneous legal standard." *Lewis v. Pagel*, 172 So. 3d 162, 172 (¶16) (Miss. 2015) (citation omitted). "Chancellors are afforded wide latitude in fashioning equitable remedies in domestic[-]relations matters, and their decisions will not be reversed if the findings of fact are supported by substantial credible evidence in the record." *Id*. (citation omitted). "We review questions of law de novo." *Id*. (citation omitted).

 *I.* *Emancipation*

¶7. As stated, Crieg argues that Maria and Patrick were legally emancipated on June 1, 2012, when they moved out of Consuelo's house and into an apartment, where they lived as roommates. According to Crieg, both children's emancipation is evidenced by the fact that they filed independent tax returns, obtained full-time employment, and supported themselves financially. He insists that Maria's emancipation is also evidenced by the fact that she, as discussed later in this opinion, purchased a car. In response, Consuelo argues that Crieg waived his emancipation argument because he failed to properly plead it as an affirmative defense under Rule 8, and she insists that the chancellor should not have allowed him to pursue this argument during the hearing. In the alternative, Consuelo insists that the chancellor did not err in finding that Maria and Patrick were not emancipated on June 1,

2012.

¶8.    Rule 81 of the Mississippi Rules of Civil Procedure applies to, among other things,

child custody, child support, and contempt actions.  M.R.C.P. 81(d)(1), (2).  It provides:

> Complaints and petitions filed in the actions and matters enumerated in subparagraphs (1) and (2) above[, which includes child custody, child support, and contempt actions,] shall not be taken as confessed.

> . . . No answer shall be required in any action or matter enumerated in subparagraphs (1) and (2) above but any defendant or respondent may file an answer or other pleading or the court may require an answer if it deems it necessary to properly develop the issues.  A party who fails to file an answer after being required so to do shall not be permitted to present evidence on his behalf.

M.R.C.P. 81(d)(3), (4).

¶9.    So under Rule 81, Crieg was not required to respond to Consuelo's petition without

being ordered to do so, and the record does not establish that the chancellor ordered him to

respond.  Therefore, Consuelo's assertion—that the chancellor erred in allowing Crieg to

argue emancipation during the hearing despite his failure to raise the argument in his

responsive pleadings—is misplaced.  It necessarily follows that Crieg also was not required

to raise any arguments or plead any defenses prior to the hearing.  Consequently, we find that

the chancellor did not err in  allowing Crieg to pursue his emancipation argument.

¶10.   As noted, the chancery court awarded Consuelo primary physical custody of Maria

and Patrick.  They lived with Consuelo in her home until on or around June 1, 2012, when

they moved into an apartment.  During the hearing in this matter, Maria and Patrick both

testified that before they moved into the apartment, Crieg helped them establish utility

5

services by putting the services in his name and paying the respective deposits. According to Patrick, he and Maria were unable to establish the service in their names due to credit issues. Crieg, Maria, and Patrick each testified that while Maria and Patrick were living in the apartment, they were both full-time college students,[1] who maintained full-time employment. Testimony revealed that after Maria and Patrick moved into the apartment, both Crieg and Consuelo assisted them financially. Crieg also testified that he planned to continue assisting the children financially. After hearing the testimony, the chancellor found that the evidence did not support a finding that Maria was emancipated. The chancellor also found that Patrick was not legally emancipated until September 5, 2012, his twenty-first birthday. *See* Miss. Code Ann. § 93-11-65(8)(a)(i) (Rev. 2013).

¶11. Under Mississippi Code Annotated section 93-11-65(8)(b) (Rev. 2013), a minor child is legally emancipated when he or she does one of the following:

  (i)    Discontinues full-time enrollment in school having attained the age of eighteen . . . years, unless the child is disabled, or

  (ii)   Voluntarily moves from the home of the custodial parent or guardian, establishes independent living arrangements, obtains full-time employment[,] and discontinues educational endeavors prior to attaining the age of twenty-one . . . years, or

  (iii)  Cohabits with another person without the approval of the parent obligated to pay support[.]

¶12. Crieg argues that under section 93-11-65(8)(b)(ii), Maria and Patrick were legally

---

[1] Maria was a full-time student at Jones County Junior College, and Patrick was a full-time student at the University of Southern Mississippi.

emancipated because they moved out of Consuelo's house and obtained full-time employment. However, Maria and Patrick were both full-time students during the entire time that they lived in the apartment. And during that time, they had not established independent living arrangements, as even Crieg admitted that he assisted them financially. As such, there was substantial evidence to support the chancellor's finding that Maria and Patrick were not emancipated on June 1, 2012. Therefore, it necessarily follows that the chancellor did not err in his finding that Maria's and Patrick's June 1, 2012 move into a shared apartment did not result in their emancipation. This issue is without merit.

## II. Contempt

¶13. Consuelo argues that the chancellor erred in failing to find Crieg in contempt based upon Crieg's failure to pay child support after June 1, 2012, and his failure to pay one-half of Maria's and Patrick's health-insurance premiums after that date. In response, Crieg argues that the chancellor did not err because his failures to pay were not willful.

¶14. Testimony presented during the hearing revealed that before Maria and Patrick moved into the apartment, Consuelo and Crieg had several discussions regarding an extrajudicial child-custody modification. During a discussion that took place in or around April 2012, Consuelo informed Crieg that she would not oppose a petition for modification of child custody filed by him if, by June 1, 2012, he provided Maria and Patrick with transportation, along with car insurance and health insurance, and helped them secure an apartment. So, as previously discussed, Crieg helped the children secure their apartment, and as discussed

7

below, he purchased Maria a car and obtained health insurance for both children. Crieg testified that he failed to pay child support from June 1, 2012, until the time of the hearing because he believed that, as a result of his complying with Consuelo's terms, he had been granted custody of the children. So he believed that he had been relieved of his duty to pay child support. Although Crieg admitted that he had failed to pay one-half of the costs of Maria's and Patrick's medical-insurance premiums, he testified that he had been under the impression that those costs were being deducted from his paycheck pursuant to an order of withholding issued by the chancery court. During her testimony, Consuelo admitted that she and Crieg had made extrajudicial arrangements concerning child support and child custody, but she denied informing Crieg that he was Maria and Patrick's custodial parent. Further, she testified that she did not pay child support to Crieg because there was no court order requiring her to do so.

¶15. While Patrick and Maria were living in the apartment, Maria received medical treatment at St. Dominic Hospital and GI Associates, both located in Jackson, Mississippi. During the hearing, the parties stipulated that Consuelo had failed to provide Crieg with copies of the children's medical bills, with the exception of the invoices for the treatment that Maria had received at St. Dominic's and GI Associates. Also, Consuelo admitted that Crieg had not failed to pay one-half of the costs of that treatment. Instead, she testified that as a result of some insurance issues, she and Crieg were awaiting a determination by his and her insurance companies as to exactly how much they owed and that after that determination was

8

made, she and Crieg would both pay one-half of the remaining balance.

¶16. After hearing the evidence, the chancellor ruled from the bench that Crieg was not in willful contempt of court. In the final judgment, the chancery court ordered the parties to take the necessary steps to have their respective insurance policies pay for the treatment Maria received at St. Dominic's and GI Associates and to each pay one-half of the remaining balance. The court also ordered Crieg to pay one-half of the children's medical-insurance premiums. The court further ordered Crieg to pay back child support for Patrick from June 2012 to September 2012, to resume paying child support for Maria, and also to pay back child support for her from June 2012.

¶17. In *Ellis v. Ellis*, 840 So. 2d 806 (Miss. Ct. App. 2003), this Court set forth the standard of review for contempt proceedings. There, we stated:

> Contempt matters are committed to the substantial discretion of the trial court which, by institutional circumstance and both temporal and visual proximity, is infinitely more competent to decide the matter than we are. If the contemnor has willfully and deliberately ignored the order of the court, then the finding of contempt is proper. This Court will not reverse a contempt citation where the chancellor's findings are supported by substantial credible evidence.

*Id*. at 811 (¶16) (internal citations and quotation marks omitted).

¶18. Applying this standard of review and considering the evidence before the chancellor, we cannot say that the chancellor's findings are not supported by substantial credible evidence. Therefore, we do not find that the chancellor erred in failing to find Crieg in willful contempt. To be clear, we give no credence to the extrajudicial arrangements made by Crieg and Consuelo. Rather, our decision is based solely on our standard of review of the

chancellor's findings. This issue is without merit.

### III. Attorney's Fees

¶19.    Consuelo argues that the chancellor should have awarded her attorney's fees because Crieg was in willful contempt. If the chancellor had found Crieg in contempt for his failure to pay the court-ordered child support, Consuelo would be correct. In *Evans v. Evans*, 75 So. 3d 1083, 1090 (¶27) (Miss. Ct. App. 2011) (citing *Mount v. Mount*, 624 So. 2d 1001, 1005 (Miss. 1993)), we noted that "[a]ttorney's fees are properly assessed against a party found to be in contempt." Here, there was substantial evidence supporting the chancellor's decision not to assess attorney's fees against Crieg because, as discussed, the chancellor did not find Crieg in contempt. This issue is without merit.

¶20.    Before the hearing in this matter, the chancery court ordered Crieg several times to respond to certain discovery requests filed by Consuelo. In the final judgment, as a sanction for Crieg's failure to comply with discovery, the chancery court ordered him to pay $2,500 in attorney's fees, but did not award any attorney's fees for his failure to make the child-support payments after June 2012. We find no error here.

### IV. Judgment Interest

¶21.    Consuelo argues that under Mississippi Code Annotated section 75-17-7 (Rev. 2009), the chancellor erred in failing to award post-judgment interest on the judgment against Crieg. In response, Crieg argues that this issue is barred because Consuelo failed to raise it during the hearing. In the alternative, he argues that an award of interest on the judgment would

10

have been punitive in nature and would have resulted in a windfall for Consuelo.

¶22.    In the final judgment, the chancery court did not award Consuelo interest on the judgment.  Section 75-17-7 provides, in relevant part: "All other judgments or decrees shall bear interest at a per annum rate set by the judge hearing the complaint from a date determined by such judge to be fair but in no event prior to the filing of the complaint." Under that section, "it is error, as a matter of law, for a chancellor not to award interest on a judgment for past-due support." *Caplinger v. Caplinger*, 108 So. 3d 992, 999 (¶25) (Miss. Ct. App. 2013) (citation omitted).  Under a different set of circumstances, we would agree with Crieg that the issue is procedurally barred because Consuelo failed to raise this issue for resolution by the chancery court (*see Scally v. Scally*, 802 So. 2d 128, 131 (¶¶27-28) (Miss. 2001) (citations omitted)), but because this involves child support, which cannot be waived, we see no reason why interest on it should be waived.  Moreover, section 75-17-7 makes it clear that a judge should award interest at a per annum rate on judgments such as this one. The chancery court rendered a judgment in favor of Consuelo for $7,819.50 in past-due child support and insurance premiums and $2,500 in attorney's fees, which were incurred in attempting to collect past-due child support from Crieg.  Interest should be calculated on these amounts.

> V.    *Payments for the Optima*

¶23.    Consuelo insists that the chancellor erred in finding that she owes Crieg for one-half of the costs of a 2012 Kia Optima that Crieg purchased for Maria because he purchased it

11

without Consuelo's input. In the alternative, she argues that the chancellor should have found that Crieg was required to pay one-half of the costs of a 2012 Nissan Maxima that Maria purchased after Crieg took the Optima from her.

¶24. Testimony presented during the hearing established that while Maria was in high school, Consuelo purchased her a 2010 Nissan Altima to drive during her senior year of high school and during her college years. However, Maria's use of the car was conditioned upon her living on campus or with Consuelo during college. At some point, Maria made it clear that she preferred to live in an apartment, so Consuelo prohibited her from driving the Altima. After that, Maria and Patrick moved into the apartment.

¶25. Crieg testified that based on his and Consuelo's discussions regarding child custody, he purchased the Optima for Maria on May 24, 2012. The Optima was financed in Crieg's wife's name, and Maria used it as her only source of transportation until on or around July 31, 2013. After an argument between Crieg and Maria, she informed him that she no longer wished to drive the Optima. Crieg later apologized to Maria and offered to let her keep the car, but she refused, and she later purchased the Maxima, which she had financed partially in her name. Consuelo's husband co-signed for that car, but Maria was financially responsible for the car payments.

¶26. Consuelo failed to pay one-half of the costs of the Optima and the insurance premiums for it. During the hearing, Crieg testified that the notes for the Optima were $350 per month, and he asked the chancellor to order Consuelo to reimburse him for one-half of those costs

12

and the costs of the insurance premiums for the Optima for the time that Maria drove it. Crieg failed to submit evidence showing the costs of the insurance premiums. Also during the hearing, Consuelo asked the chancellor to order Crieg to pay one-half the costs of the Maxima, including the insurance premiums for it.

¶27.   During the hearing, in ruling from the bench, the chancellor stated:

> Now, under the terms of the [p]roperty [s]ettlement [a]greement, each [party] is responsible for one-half of the transportation, and the court finds that [Consuelo] owes $2, 275 for the [Optima]. Now, there is no evidence of the amount of [the] insurance or the tag, and that claim is denied and is now barred for failure to present evidence on that issue[.]
>
> Now, [Consuelo] . . . has a different claim, and that involves . . . [the] Maxima. . . .
>
> The court finds that [Crieg] complied with the . . . [a]greement when he offered the use of the Kia to Maria. When she rejected the vehicle, she relieved him of [his] responsibility to pay for a vehicle of her own choosing. Providing "transportation" does not encompass purchasing an asset to be owned by the minor.

¶28.   In the final judgment in this matter, the chancery court ordered Consuelo to pay one-half of the costs of the Optima for the time that Maria used it for transportation and ordered each party to pay one-half of the costs of the insurance premiums for the Maxima. Because Crieg had failed to establish the amount of the insurance premiums for the Optima, the court did not order Consuelo to pay one-half of those insurance costs.

¶29.   The property-settlement agreement provided:

> [Crieg] and [Consuelo] agree that should [Maria] and [Patrick] show an inclination and talent to attend college, [then Crieg] and [Consuelo] each agree to pay for one-half . . . of the college tuition. [They] further agree to each pay

13

one-half . . . of the expenses[,] including but not limited to books, activity fees, transportation, food, board and other expenses incurred while [Maria] and [Patrick] attend college.

The record reveals that before Maria purchased the Maxima, she had the option of driving the Optima. This is because Crieg had not physically confiscated the Optima, and even after Maria informed Crieg that she no longer wished to drive the car, he informed her that he wished for her to have it. Maria's decision to purchase the Maxima — although one her mother clearly supported for some reason — was not one of necessity, as there was no need for her to create a new debt in order for her to have transportation. So we do not find that the chancellor abused his discretion in ordering Consuelo to pay one-half of the costs of the Optima for the time that it was used as Maria's source of transportation or in failing to require Crieg to pay one-half of the costs of the Maxima. This issue is without merit.

¶30. In conclusion, we find substantial evidence supporting the chancellor's findings regarding emancipation, contempt, attorney's fees, and the Optima; so we affirm on those issues. However, because we find that the chancellor erred as a matter of law in failing to award Consuelo interest on the judgment, we reverse and remand for a determination of post-judgment interest.

¶31. **THE JUDGMENT OF THE CHANCERY COURT OF LINCOLN COUNTY IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART. ALL COSTS OF THIS APPEAL ARE ASSESSED ONE-HALF TO THE APPELLANT/CROSS-APPELLEE AND ONE-HALF TO THE APPELLEE/CROSS-APPELLANT.**

**LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, CARLTON, JAMES, WILSON AND GREENLEE, JJ., CONCUR. FAIR, J., NOT PARTICIPATING.**