751 So.2d 1078 (1999)
Ricky M. LACK, Appellant,
v.
Kathy Lack NASH, Appellee.
No. 98-CA-00073-COA.
Court of Appeals of Mississippi.
June 29, 1999.
Rehearing Denied October 5, 1999.
Certiorari Denied December 2, 1999.
James D. Shannon, Elise Berry Munn, Hazlehurst, Attorneys for Appellant.
Christopher A. Arledge, Crystal Springs, Attorney for Appellee.
BEFORE SOUTHWICK, P.J., COLEMAN, AND THOMAS, JJ.
THOMAS, J., for the Court:
¶ 1. Ricky M. Lack appeals the chancellor's decision to dismiss his petition for modification of judgment of divorce, raising the following issues as error:
I. THE CHANCELLOR WAS MANIFESTLY WRONG AND COMMITTED REVERSIBLE ERROR IN FINDING NO SUBSTANTIAL OR MATERIAL CHANGE IN AFTER-ARISING CIRCUMSTANCES OF LACK SUFFICIENT TO SUPPORT A DOWNWARD MODIFICATION OF CHILD SUPPORT.
II. THE CHANCELLOR WAS MANIFESTLY WRONG AND COMMITTED REVERSIBLE ERROR IN REFUSING TO RECONSIDER THE AWARD OF CHILD SUPPORT IN THE ORIGINAL DIVORCE DECREE WHERE THERE WERE NO WRITTEN OR SPECIFIC FINDINGS DESPITE A LARGE DEVIATION FROM THE STATUTORY GUIDELINES *1079 IN THE AMOUNT OF CHILD SUPPORT AWARDED.
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. Ricky M. Lack and Kathy Lack Nash were married on July 24, 1977 in Copiah County, Mississippi. The marriage produced three children: Amanda Nicole Lack, born August 18, 1979; Mary Kathryn Lack, born April 9, 1990; Matthew Cody Lack, born August 10, 1993. Certain irreconcilable differences arose between Lack and Nash resulting in their separation in March 1996.
¶ 4. On November 21, 1996, Lack and Nash were granted a divorce based on irreconcilable differences. A property settlement and child custody agreement entered into between Lack and Nash, dated September 13, 1996, was incorporated into the judgment of divorce. The agreement provides in pertinent part:
(1) Nash would have exclusive legal and physical custody of the parties' minor children, subject to reasonable visitation rights of Lack.
(2) Lack would make two payments of $325 per month in child support, to be paid on the first and fifteen day of each month.
(3) Lack would provide health insurance and pay the uninsured portion for any medical, health care, and dental expenses for the parties' children.
(4) Lack would pay the tuition for the parties' children to attend a state supported college or university for four years, provided the children make acceptable progress toward a degree and maintain a full academic schedule.
(5) Lack would maintain a life insurance policy of $25,000 on his life with the parties' children named as beneficiaries.
(6) Nash would claim the parties' children as dependents for tax purposes.
(7) Lack be required to pay the debt due and owing to Trustmark National Bank with an approximate balance of $5,814.60, payable in monthly installments of $193.98.
¶ 5. On September 16, 1997, Lack filed a petition for modification of the judgment of divorce. Lack claimed that material changes in circumstances had occurred to the extent that he could no longer afford to make his child support payments. Lack claimed that one of the parties' children, Amanda, had moved in with him, and his financial condition had worsened to the point that he could no longer afford basic living, shelter, and transportation expenses. Lack sought the following relief:
(1) The child support payments that Lack is required to pay be reduced to an amount within the statutory limits of Miss.Code Ann. § 43-19-101 (Supp.1998), and that the amount be specified as per child per month.
(2) Nash be required to pay child support to Lack for Amanda, who is living with Lack.
(3) Nash be required to maintain health insurance for the three minor children and be required to pay one-half of the medical expenses of the minor children not covered by insurance.
(4) Nash be required to pay one-half of the college education expenses of the minor children.
(5) Lack be allowed to claim the minor children as dependents for income tax purposes.
¶ 6. A hearing on this matter was held on November 12, 1997. The chancery court issued its judgment on November 26, 1997. The chancellor concluded that the petition for modification was without merit and denied it in toto, subject to the stipulations entered into by and between the parties that the custody of Amanda would be changed so that Lack and Nash would have joint legal custody with physical custody being vested with Lack, Nash would be granted reasonable rights of visitation, *1080 and Lack could claim Amanda as a dependent for federal and state tax purposes.
¶ 7. Nash filed a motion for a new trial or to alter or amend the judgment on December 4, 1997. The chancellor denied Lack's motion on December 11, 1997. From these unfavorable rulings, Lack appealed.

ANALYSIS

I.

THE CHANCELLOR WAS MANIFESTLY WRONG AND COMMITTED REVERSIBLE ERROR IN FINDING NO SUBSTANTIAL OR MATERIAL CHANGE IN AFTER-ARISING CIRCUMSTANCES OF LACK SUFFICIENT TO SUPPORT A DOWNWARD MODIFICATION OF CHILD SUPPORT.
¶ 8. Lack argues that abundant testimony and evidence was presented which clearly showed a material and substantial change in the after-arising circumstances of the parties substantial enough to warrant a downward modification of child support. Lack points to the following new circumstances: Amanda now lives with him; Lack pays Amanda's expenses, except for the note on her car; Lack has suffered a decrease in earning as of October 1, 1997, since he was limited to no more than ten hours of overtime per two-week period, whereas before, he had been able to work up to twenty-four hours of overtime for each two-week period; Lack was paying $220 per month in rent, but since moving his mortgage is now $256 per month. Lack also claims that he has a continuously increasing debt owed on several credit cards and to certain individuals in order to meet his support obligations. Lack argues that ample testimony as well as his financial declaration show that he has sustained a significant increase in expenses; that his financial and earning capacity is much less than that of his former wife; that his necessary living expenses far exceed his income; and that the amount of $650 for child support is beyond his financial ability to pay. Therefore, Lack maintains that the chancellor should have found a material change sufficient to justify a modification of the child support.
¶ 9. Our review in domestic relations matters is extremely limited. We "will not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." Sandlin v. Sandlin, 699 So.2d 1198, 1203 (Miss.1997) (citations omitted). We are required to respect the findings of the chancellor if they are supported by credible evidence and not manifestly wrong. Id. Our supreme court has stated that "[t]o justify changing or modifying the divorce decree there must have been a material or substantial change in the circumstances of the parties. The material or substantial change is relative to only the after-arising circumstances of the parties following the original decree." Shipley v. Ferguson, 638 So.2d 1295, 1297 (Miss., 1994) (citations omitted). Furthermore, the change should not be "something that could have been or should have been reasonably anticipated by the parties to the agreement at the time of the agreement." Id. (citations omitted).
¶ 10. The chancellor's decision was as follows:
The present matter is before the Court on Mr. Lack's petition to modify the terms and provisions of the judgment. He alleges that there has been a material change in circumstances which would justify the Court in modifying his support obligations by, number one, reducing his child support, number two, changing the support order from a global support order to a per child support order, requesting that Mrs. Nash now be required to pay child support for the oldest child, Amanda, who is now living with Mr. Lack, to shift the health insurance obligation on all three children from Mr. Lack to Mrs. Nash and to require that she pay half of the uncovered *1081 expense. He also wants the Court to modify the judgment by requiring Mrs. Nash to pay half of the college education expenses of the children, and that he be allowed to claim all of the children as dependents for income tax purposes.
At the time of the granting of the divorce, Mr. Lack filed a financial statement in accordance with the requirements of the Uniform Chancery Court Rule 8 point something. At that time he showed gross monthly income of $1,492, a net monthly take-home of $1,217, and monthly expenses of $575, which included $193 payment to Trustmark as per the agreement. He did not list any liabilities whatsoever and declared to the Court that everything he said in his financial statement was true and correct.
His current financial statement shows that his gross income has gone up $600 plus dollars and his net income has gone up $400 plus dollars. He now lists living expenses of $1,830 in contrast to $382 at the time of the divorce. He shows installment obligations of $443, which is inclusive of the $193 Trustmark debt.
The parties stipulated at the beginning of the suit that they would have joint legal custody of Amanda, and Mr. Lack was to have physical custody of Amanda, with Mrs. Nash to have reasonable rights of visitation.
Amanda is 18 years of age and is a student at Copiah-Lincoln Junior College. She has been living with Mr. Lack for a couple of months now.
It is to be noted, going back to Mr. Lack's financial declaration that was filed simultaneously or almost simultaneously with the granting of the divorce, that although he showed only a net monthly pay of $1,217, he agreed to pay over 50 percent of his earnings in child support, notwithstanding the fact that the lawyer who was representing him told him not to do it.
The bottom line is that Mr. Lack made an improvident contract, a foolish contract, and it is true that he has now accumulated a lot of debt obligation which flows directly from this improvident and foolish contract.
So the bottom line of what Mr. Lack is now asking this Court to do is to relieve him from his improvidence. And the Supreme Court of the State of Mississippi has repeatedly said that it is not the business of courts to relieve people from foolish contracts voluntarily and knowingly entered into.
I think it is significant that the Supreme Court held in the case of [Shaeffer v. Shaeffer, 370 So.2d 240, 242 (Miss. 1979)], that child support couldn't be reduced because the judge felt he allowed too much in the first instance. It would surely be an anomaly in the face of that decision for a judge to intervene and say, "I'm going to relieve you because you took on too big an obligation to begin with."
Now, there has certainly been no material change in circumstances that would justify me from relieving Mr. Lack of his contract to pay global child support. It's true that Amanda is now living with Mr. Lack. Mrs. Nash is making a car payment of $215 a month, which allows Amanda to go back and forth to school, and Mr. Lack admits that that's a part of Amanda's reasonable and necessary monthly expenses. His exact testimony was, "She has got to have a way to go."
¶ 11. This motion to reduce is without merit and is denied in toto and dismissed.
¶ 12. We will address all of Lack's arguments by stating that there was sufficient and credible evidence on the record supporting the chancellor's decision. Lack argues that he has undergone a material change in his financial situation since the original divorce decree in November 1996. However, the record shows that Lack's net income has actually increased since November 1996. This is due to the fact that Lack is now able to get paid for overtime *1082 (although it has been cut back some since October 1997), where as at the time of the divorce Lack was not paid for overtime. Also, Lack has taken a second job resulting in an extra $200 a month. Furthermore, while it may be true that Lack has increased his debt since the divorce, including debt owed in an attempt to meet his support payments, that in and of itself does not warrant a reduction in child support. See Varner v. Varner, 666 So.2d 493, 495-98 (Miss.1995). Our supreme court has stated that "[p]ersonal bills cannot be used as a factor to reduce support payments." Id. at 497 (quoting Gregg v. Montgomery, 587 So.2d 928, 932 (Miss. 1991)).
¶ 13. The only significant change in circumstances is the fact that Amanda now lives with Lack. Lack argues that the chancellor committed reversible error in not changing Lack's child support obligation from a global obligation to a perchild obligation since Amanda now lives with him, thereby reducing Lack's support payments to conform to the statutory guidelines for two children under Miss. Code Ann. § 43-19-101 (Supp.1998). However, simply because a child moves in with the parent who is paying child support does not automatically mean that parent is entitled to a reduction in child support payments. Especially in such a case as we have before us, where the child support payments are designated as a lump sum payment.
¶ 14. In a case factually distinguishable but nonetheless instructive on the law, our supreme court has held that "when a parent is ordered to pay a specified amount periodically for the benefit of more than one child, the emancipation of one child does not automatically reduce the liability of the parent for the full amount." Moore v. Moore, 372 So.2d 270, 271 (Miss.1979). Stated somewhat differently, our supreme court has held that in cases where there is a single lump sum amount ordered as child support for two or more children "the emancipation of one child does not automatically reduce the supporting parent's periodic payment." Varner v. Varner, 588 So.2d 428, 433 (Miss.1991) (citations omitted). The rationale given by our supreme court for this rule is equally applicable to the case at hand. Moore gives three reasons for this rule:
First, the allowance was $75 per week for the family group and did not provide for an allowance of $15 per week for each child. Perhaps the judgment contemplated that a base amount would be required regardless of the number of children with an undetermined amount for each child being included in the $75 weekly allowance.
Second, a child support order is not based solely on the needs of the minor children, but takes into account the ability of a parent to pay child support. Consequently, a child support order may not accurately reflect the amount actually required for the support of children, but may reflect only the amount a parent can afford to pay. Allowing an automatic reduction of an undivided order would ignore the realities of such a situation.
Third, considering an undivided child support order as equally divisible among the children overlooks the possibility that the requirements of the individual children may very [sic] widely, depending on the circumstances of each child.
Moore, 372 So.2d at 271-72.
¶ 15. While it is undoubtedly true that Nash has had a reduction in expenses and Lack an increase in expenses since Amanda has come to live with Lack, those expenses, especially for Lack, are nominal. Lack testified that any extra living expenses associated with Amanda living with him are confined to gas for her car, increased water and electric expenses, increased laundry expense, and the added expense of two meals a day for Amanda. The record shows that Amanda had a part-time job during the summer and paid for most of her incidental expenses such as entertainment, cosmetics, and lunch. The *1083 record further reflects that Amanda was on full scholarship to Copiah-Lincoln Community College, thereby nullifying Lack's obligation to pay for her college tuition as required in the divorce agreement. Furthermore, any added expense associated with Amanda living with Lack is offset with the tax reductions Lack can claim since Amanda is now his dependent. Of course, the reverse is that Nash has a decrease in her water, electric, gas, and food expenses. However, she can no longer claim Amanda as a dependent for tax purposes. Furthermore, Nash must continue to pay the car note of $215 on Amanda's car as stipulated in the original divorce agreement.
¶ 16. Under the totality of the circumstances, where the original agreement set forth a lump sum payment not designated per child, Nash must continue to pay the necessary expense of the car note for Amanda's car, the extra cost to Lack for Amanda living with him is nominal, and Lack can now claim Amanda as a dependent, we hold that the chancellor was not manifestly in error in refusing to change Lack's global child support payment to a per child scale and reduce his payments to conform with Miss.Code Ann. § 43-19-101 (Supp.1998).

II.

THE CHANCELLOR WAS MANIFESTLY WRONG AND COMMITTED REVERSIBLE ERROR IN REFUSING TO RECONSIDER THE AWARD OF CHILD SUPPORT IN THE ORIGINAL DIVORCE DECREE WHERE THERE WERE NO WRITTEN OR SPECIFIC FINDINGS DESPITE A LARGE DEVIATION FROM THE STATUTORY GUIDELINES IN THE AMOUNT OF CHILD SUPPORT AWARDED.
¶ 17. Lack argues that the chancellor committed reversible error in the original decree by failing under Miss.Code Ann. § 43-19-101 (Supp.1998) to make written or specific findings in regard to the deviation between the support awarded and the statutory guidelines. Lack did not raise this issue until he filed his motion for new trial on the petition to modify. As noted earlier, the original decree was agreed to and submitted to the chancellor as a stipulation. Lack's objection comes too little too late.
¶ 18. THE JUDGMENT OF THE COPIAH COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, COLEMAN, DIAZ, IRVING, LEE, AND PAYNE, JJ., CONCUR.