# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-CP-01167-COA

**LAKEISHA C. GREEN**                                                        **APPELLANT**

**v.**

**TORRANCE T. GREEN**                                                        **APPELLEE**

DATE OF JUDGMENT:                 09/14/2021
TRIAL JUDGE:                      HON. DENISE OWENS
COURT FROM WHICH APPEALED:        HINDS COUNTY CHANCERY COURT,
                                  FIRST JUDICIAL DISTRICT
ATTORNEY FOR APPELLANT:           LAKEISHA C. GREEN (PRO SE)
ATTORNEYS FOR APPELLEE:           E. CHARLENE STIMLEY PRIESTER
                                  MELVIN VINCENT PRIESTER JR.
NATURE OF THE CASE:               CIVIL - DOMESTIC RELATIONS
DISPOSITION:                      AFFIRMED IN PART; REVERSED AND
                                  REMANDED IN PART - 10/18/2022
MOTION FOR REHEARING FILED:

**BEFORE BARNES, C.J., McDONALD AND McCARTY, JJ.**

**McDONALD, J., FOR THE COURT:**

¶1.     Lakeisha Green appeals from the Hinds County Chancery Court's judgment that, among other things, granted her ex-husband, Torrance Green, a divorce, set child support, and distributed the property of the parties. Although she filed the initial complaint for divorce, participated in discovery, and attended one hearing on temporary relief, Lakeisha failed to appear at trial. Representing herself pro se, Lakeisha appealed the judgment. After reviewing the record and the briefs of the parties, we affirm in part, reverse in part, and remand for further proceedings.

**Facts**

¶2.     Lakeisha, a nurse practitioner, and Torrance, a doctor, were married on September 3, 2006. During their marriage, the parties had two children: I.G. and K.G.[1]

¶3.     The parties each owned homes prior to their marriage; Torrance owned a home in New Orleans, and Lakeisha owned a home in Jackson. However, during the marriage, they purchased a home together in Jackson in which they lived until they separated on November 9, 2019.[2] Prior to the marriage, Torrance owned a 2005 GMC Sierra, and Lakeisha owned a 1999 Ford Mustang. Together they purchased a 2014 Cadillac CTS and a 2017 Cadillac XT5. The 2014 Cadillac CTS was titled solely in Lakeisha's name, but Torrance used it on a daily basis.

¶4.     On December 19, 2019, Lakeisha filed for divorce, alleging grounds of adultery and desertion pursuant to Mississippi Code Annotated section 93-5-1 (Rev. 2021) or, in the alternative, on the ground of irreconcilable differences pursuant to Mississippi Code Annotated section 93-5-2 (Rev. 2021). In her complaint, Lakeisha requested sole and exclusive use of the 2017 Cadillac XT5, 2005 GMC Sierra, and 1999 Ford Mustang. Lakeisha asked the court to order Torrance to maintain a life insurance policy with coverage in the amount of $3,000,000 naming the children as the beneficiaries.[3]

¶5.     In her complaint, Lakeisha also sought custody of the children, child support, and

---

[1] We use initials to protect the identities of the minors.

[2] Although the parties lived in the marital home, each also maintained the separate homes they owned prior to the marriage. Lakeisha pleaded in her divorce complaint that all three homes were marital property; Torrance disagreed.

[3] Torrance maintained several life insurance policies which he identified in his financial statement disclosed pursuant to Uniform Chancery Court Rule 8.05.

alimony. She further specifically requested that the court award her "an equitable portion of all cash accounts, checking accounts, savings accounts, certificates of deposit, cash money, stocks, bonds, IRA accounts, pension funds, retirement plans and savings, including, but not limited to IRAs, 401ks and employer sponsored retirement accounts, life insurance, real property or any other accounts funds or securities which are presently held in the defendant's name." On the Rule 8.05 financial statement he later filed, Torrance listed assets totaling $201,802.11 that were titled in his name. See the following chart:

| Name(s) on Account | Type of Account | Balance (estimated totals) |
|---|---|---|
| Torrance Green | Checking | $60,118.97 |
| Torrance Green | CD | $50,000.00 |
| Torrance Green | CD | $52,022.49 |
| Torrance Green | CD | $2,514.10 |
| Torrance Green | CD | $33,629.87 |
| Torrance Green | CD | $3,516.68 |

Torrance also included two Roth IRA accounts, one valued at $12,419.78 and another at $2,898.37, totaling $15,318.15. However, he did not indicate the titleholder of these accounts. In her complaint, Lakeisha further sought sole and exclusive use of any accounts that were in her name, but she did not indicate what those accounts were.

¶6.     Torrance also listed certain indebtedness on his Rule 8.05 financial statement, including $98,000 owed to the IRS for 2018 taxes, three obligations owed to Trustmark in the amounts of $48,727.09; $22,477.09; and $2,107.07, as well as a $23,998.59 note to Wells Fargo. There was no information included about when the latter obligations were incurred

or in whose name these debts were listed.

¶7.     On January 28, 2020, Lakeisha requested that the chancellor who had been assigned to her case recuse herself.  The chancellor agreed and was replaced by another chancellor on June 2, 2020.  Lakeisha made no further motions for recusal concerning the replacement chancellor.

¶8.     On March 16, 2020, Torrance filed his answer, affirmative defenses, and a counter-claim for divorce.  Torrance denied any fault, but he agreed to a divorce on the ground of irreconcilable differences.  In the alternative, Torrance counter-claimed for divorce on the grounds of constructive desertion or habitual cruel and inhuman treatment by Lakeisha.  Torrance sought the exclusive use and ownership of the 2014 Cadillac CTS and the 2005 GMC Sierra and sole and exclusive use of all bank accounts and retirement accounts held in his name.  Torrance asked the court to order both parties to maintain life insurance policies naming the children as beneficiaries.

¶9.     On March 17, 2020, Lakeisha filed an answer to the counter-claim for divorce, denying all allegations.  Lakeisha reiterated her previous requests regarding property distribution.

### *Pre-trial Motions and Orders*

¶10.    On June 8, 2020, Torrance filed a motion for temporary relief, requesting temporary custody and/or visitation with the children, and temporary exclusive ownership of the 2014 Cadillac CTS.  On that same day, Lakeisha's attorney filed a motion to withdraw as counsel.  On June 12, 2020, the court granted the attorney's motion, and on June 15, 2020, a new

attorney entered an appearance on Lakeisha's behalf.

¶11.    On August 10, 2020, Torrance filed an amended motion for temporary relief. Torrance restated his previous allegations regarding custody and visitation of the children and his request for ownership of the 2014 Cadillac CTS.  Torrance further petitioned the court to give him an opportunity to retrieve his personal property from the marital home including but not limited to power tools, electronics, files and paperwork, security hardware, kitchen utensils, etc.

¶12.    On September 25, 2020, Lakeisha responded to Torrance's amended motion for temporary relief and filed a motion to restrict Torrance's visitation and other relief.  In this pleading, Lakeisha argued that Torrance had mental and physical health conditions that made him unfit to care for the children and that he was a danger to the safety of himself and others. Lakeisha sought sole and exclusive use of the 2014 Cadillac CTS, which was titled solely in her name although Torrance currently had possession of the car.

¶13.    The parties met with the court on September 29, 2020, and "hammered out an order."[4] However, the agreement was not read into the record at that time, and later the parties were unable to agree on a draft of a proposed written order.  So no order was entered as a result of that meeting with the court.

¶14.    On February 5, 2021, Lakeisha's second attorney filed a motion to withdraw as counsel.  However, she still represented Lakeisha at another meeting with the court

---

[4] The only transcripts in the record are the hearings held by the court on March 10, 2021, and August 17, 2021. However, during those hearings the parties or their attorneys referred to prior meetings with the court on September 29, 2020, where they "hammered out an order," and a later meeting on February 12, 2021.

concerning Torrance's amended motion for temporary relief via Zoom on February 12, 2021.[5] As a result of that meeting the chancery court issued an order giving Torrance access to an account with Wells Fargo that secured the 2014 Cadillac so that he could negotiate payments and obtain its possession. The court further ordered Lakeisha to transfer the title of the 2014 Cadillac CTS to Torrance, after Torrance provided proof of payment of the outstanding debt owed to Wells Fargo. The court issued a written order that same day which awarded the parties joint custody of the children and visitation to Torrance. The court ordered Torrance to pay child support beginning March 5, 2021. The court also ordered that Torrance was allowed to retrieve his property that he listed in his amended motion from the marital home.

¶15. On February 12, 2021, the court allowed Lakeisha's second attorney to withdraw as counsel. Thereafter, Lakeisha represented herself pro se.

¶16. On February 26, 2021, Torrance filed a motion to amend/correct the February 12, 2021 temporary order. Torrance alleged that the order erroneously ended visitation at 2:00 p.m. instead of 6:00 p.m. He also requested that the court set a specific time for him to retrieve his belongings from the marital home. This motion was noticed for hearing on March 10, 2021, and a Rule 81 summons was also issued on February 26, 2021, regarding this hearing. *See* M.R.C.P. 81.

¶17. On February 28, 2021, Lakeisha wrote the chancery court judge an eight-page letter with email attachments which she filed for the record. She accused Torrance of being a

---

[5] There was no transcript of this meeting, but apparently Lakeisha was not on the Zoom call.

social deviant, suicidal, homicidal, and abusive. She explained that she had provided her attorney a key to the 2014 Cadillac because she had been ordered to turn the vehicle over to Torrance. However, the payments were not made, despite her providing Torrance with the account information. The car was repossessed. Lakeisha asked the court to rescind the temporary order and give her time to get an attorney. The unsworn letter was not copied to Torrance's attorney.

¶18. On March 10, 2021, the court heard Torrance's motion to correct the temporary order. Torrance and his counsel appeared as did Lakeisha, representing herself. During the hearing, Lakeisha repeatedly tried to raise issues that were not before the court.[6] She talked over and/or cut off the court and the other parties who were speaking. The court, noting that Lakeisha was not represented by counsel, tried to give her as much leeway as possible, but kept the hearing on track. The court approved the time changes regarding the visitation schedule and set March 20, 2021, as both the date for the first visitation and the date for Torrance to retrieve his property from the marital home. The Court further found that Lakeisha violated the court's previous order by selling the 2014 Cadillac. The court ordered that Lakeisha either produce the vehicle to Torrance or pay him the value of the car. The court's written order was filed on March 16, 2021.

---

[6] Lakeisha tried to argue the merits of divorce action during this limited hearing. She testified that Torrance failed to pay child support or comply with the orders regarding the 2014 Cadillac. She said Torrance was violent, had abused her and the children, and that he was unfit for unsupervised visitations. She stated that Torrance was mentally ill, homicidal, and suicidal, but the only evidence she presented to support her assertions was an expired order regarding a pending domestic violence action between the parties. Lakeisha further argued that Torrance had fathered other children during the marriage.

7

¶19.	On July 14, 2021, Torrance filed a motion to hold Lakeisha in contempt for allegedly continually failing to comply with the court's orders. Specifically, Torrance pleaded that Lakeisha had obstructed Torrance's ability to retrieve some of his property from the marital home, that she had failed to return the 2014 Cadillac CTS or pay its value as ordered by the court, and that Lakeisha failed to follow the orders regarding visitation. On July 21, 2021, a Rule 81 summons was issued to give Lakeisha notice of a hearing on the contempt action which was set for August 17, 2021.

¶20.	On August 3, 2021, Torrance also filed a notice of hearing on the merits of the divorce action, also set for August 17, 2021. The notice of hearing reflects that it was mailed to Lakeisha at her mailing address. Although the record reflects that Lakeisha did not appear on August 17, 2021, she did receive the notice because on appeal she states she did not attend because she was too upset with the judge, and the other parties in the suit.

### Trial

¶21.	The court heard the merits of the divorce case on August 17, 2021.[7] Torrance, his witness, and his attorney were present; the record reflects that Lakeisha was not. Torrance's counsel told the court that they had not heard from Lakeisha despite their efforts to communicate via email, by certified mail, and through a process server. Torrance's counsel reported that the certified mail came back with only the word "Covid" written on it and that Lakeisha failed to answer the door for the process server despite clear signs that she was home. After a brief recess, the court proceeded with the hearing.

---

[7] The court did not hear Torrance's motion for contempt although it was also noticed for hearing.

### A. Torrance's Testimony Concerning the Grounds for Divorce, Visitation, and Retrieval of His Property

¶22. Torrance testified that Lakeisha habitually told his peers, family, friends, and strangers that he was mentally ill, homosexual, suicidal, and homicidal. Torrance testified this occurred in his presence, and in the presence of medical professionals of other departments within the hospital who would report her comments to him. Torrance said that Lakeisha continued to make these statements despite his requests that she stop. He referred to the letter Lakeisha had filed with the court as an example of the accusations Lakeisha had made. Torrance also testified that Lakeisha had him falsely arrested by police. Torrance testified that these actions by Lakeisha caused him emotional distress and damaged his image in the medical community. Her accusations forced him to move his practice from Vicksburg, Mississippi, to Columbus, Mississippi. Torrance denied the truth of any of the comments Lakeisha made about him to others.

¶23. Torrance further testified that Lakeisha had alienated him from contact and visitation with his children. Lakeisha had only allowed two visits since 2019, the last occurring in October 2020, despite the court's orders mandating visitation. Torrance testified that the differences between him and Lakeisha were irreconcilable and he requested the court grant him a divorce.

¶24. Torrance further testified that when he and law enforcement arrived at the marital home to retrieve his property on March 10, 2021, Lakeisha and the children were not home. Lakeisha left him a note stating that certain property of his had been "burglarized or stolen from the home in September 2020." Torrance testified that the garage had thousands of

dollars' worth of power tools and other equipment inside and he requested that the court give him access to his property.

### B. Torrance's Testimony Concerning the Marital Home

¶25. Concerning the property of the parties, Torrance testified that the marital home located in Jackson, Mississippi, was titled in both his and Lakeisha's name, but the mortgage was solely in Lakiesha's name. On his Rule 8.05 financial statement, Torrance valued the home at $225,000, with an outstanding mortgage balance of approximately $100,000. When asked by his counsel what he would propose concerning the house, Torrance said that either Lakeisha could buy out his interest or that the house could be sold, with the parties splitting the profit.

### C. Torrance's Testimony Concerning the Vehicles

¶26. Torrance requested the use of the 2005 GMC Sierra, which was titled solely in his name and acquired prior to the marriage. As noted in his Rule 8.05 financial statement, Torrance claimed the truck was worth $5,000.[8] He also asked for sole and exclusive ownership of the 2014 Cadillac CTS, which was titled in Lakeisha's name, or that he be paid the current value of the car. Torrance testified that this was his primary vehicle, and he presented evidence that the current Kelly Blue Book value of the car was between $13,000 and $14,000. Torrance said that Lakeisha could have the 2017 Cadillac XT5 that was titled in both parties' names. Torrance gave no testimony about the value of the 2017 Cadillac and he did not estimate its value in his Rule 8.05 financial statement, noting only that they paid

---

[8] Lakeisha had possession and control of the 2005 GMC Sierra throughout these proceedings and at the time of the hearing on August 17, 2021.

10

$47,000 for it.[9] Torrance agreed that Lakeisha should have the 1999 Ford Mustang, which was titled in her name and acquired by her prior to the marriage and which he valued at $15,000.

### D. Torrance's Testimony Concerning the Financial Accounts

¶27. Torrance requested that he have sole and exclusive ownership of any and all retirement accounts in his name, but he did not specifically identify them during his testimony. His Rule 8.05 financial statement reflected two Roth IRAs with a combined value of $15,318.15. However, Torrance gave no testimony about whether these were the only retirement accounts of the parties or whose name these accounts were in. In addition, Torrance did not testify about the other bank accounts such as the checking account and certificates of deposits that were referred to by both parties in the pleadings and on Torrance's Rule 8.05 financial statement.

### E. Torrance's Other Requests

¶28. Torrance requested that the court grant him compensation for the rental car expenses he incurred after Lakeisha failed to comply with the March 16, 2021 order regarding the 2014 Cadillac CTS. Torrance also asked that the court award him damages for the twenty-one days he took off work for visitations that Lakeisha prevented him from having. He estimated his lost earnings at a rate of $160 an hour for a twelve-hour shift each day, for a total of $40,320. Torrance requested that all child support be held in the court registry until Lakeisha started to comply with the court orders concerning his visitation rights. Torrance

---

[9] Thus, the equity value in the 2017 Cadillac was not reflected in the record.

also requested that he be granted the tools and other equipment contained within the garage, which he estimated were valued between $30,000 and $35,000.

F.     *Witness Testimony*

¶29.    After Torrance testified, his mother Addie Lee Green testified that she witnessed Lakeisha publicly call Torrance mentally ill and a homosexual to family, friends, and strangers on multiple occasions. One specific instance of this occurred at Torrance's fortieth birthday party.   Addie also testified that Lakeisha had restricted her access and communication with her grandchildren.

## Court Ruling and Judgment

¶30.    After hearing testimony, the court ruled from the bench and awarded Torrance a divorce on the grounds of habitual cruel and inhuman treatment. The court made no specific findings concerning the division of the property but directed Torrance's counsel to prepare and present an order. Torrance's attorney did so, and the court signed the judgment for divorce on September 14, 2021.

¶31.    In that order, the court awarded joint legal custody to both Torrance and Lakeisha, physical custody to Lakeisha, and visitation to Torrance. The court did not classify the property of the parties as marital or non-marital except for the home, which the court ordered to be equitably divided. The court ordered that the house be appraised and that the parties agree on its distribution between themselves by December 1, 2021. If the parties could not agree on the terms of distribution, then the court ordered that the house be placed on the open market by December 2, 2021, and sold with the parties dividing the equity equally.

12

¶32. The court granted Torrance sole and exclusive ownership of his property in New Orleans, Louisiana, and sole and exclusive use of the 2005 GMC Sierra and the 2014 Cadillac CTS (or its value $13,952.00). If Lakeisha should fail to produce the 2014 Cadillac or its value, the court ordered that the cost of the Cadillac be reduced from Lakeisha's equitable share of the marital home. The vehicles were ordered to be given to Torrance by October 1, 2021. The court granted Lakeisha sole and exclusive ownership and use of the 1999 Ford Mustang, the 2017 Cadillac XT5, and her pre-marital home in Jackson, Mississippi.

¶33. Without specifically identifying them, the court granted each party sole and exclusive use of any and all retirement accounts held within their respective names. The court ordered both parties to maintain life insurance policies with the children named as beneficiaries. The chancery court made no findings concerning the equities of its distribution of the marital property as required by *Ferguson*.[10]

---

[10] In *Ferguson v. Ferguson*, 639 So. 2d 921, 928 (Miss. 1994), the Mississippi Supreme Court suggested that chancery courts consider the following guidelines, where applicable, when attempting to effect an equitable division of marital property:

> 1. Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows:
>     a. Direct or indirect economic contribution to the acquisition of the property;
>     b. Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage; and
>     c. Contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets.
> 2. The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by

¶34. The chancery court granted physical custody of the minor children to Lakeisha and visitation to Torrance. The court ordered that Torrance maintain health insurance on the children, pay 50% of any amounts not covered by insurance and pay $1,750.00 per child per month in child support.

¶35. Lakeisha filed no post-trial motions. However, on October 14, 2021, she filed her notice of appeal pro se.

## Standard of Review

¶36. "There is a presumption that there is sufficient evidence to sustain a decree" once the chancellor enters it. *Luse v. Luse*, 992 So. 2d 659, 662 (¶9) (Miss. Ct. App. 2008) (citing *Stinson v. Stinson*, 738 So. 2d 1259, 1264-65 (¶28) (Miss. Ct. App. 1999). "We will not disturb a chancellor's findings unless [they are] manifestly wrong, clearly erroneous, or an erroneous legal standard was applied." *Oswalt v. Oswalt*, 981 So. 2d 993, 995 (¶5) (Miss. Ct. App. 2007). We must respect the chancery court's findings if they are supported by

agreement, decree or otherwise.
3. The market value and the emotional value of the assets subject to distribution.
4. The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;
5. Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;
6. The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;
7. The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity; and,
8. Any other factor which in equity should be considered.

14

credible evidence and not manifestly wrong. *Mizell v. Mizell*, 708 So. 2d 55, 59 (¶13) (Miss. 1998). "Reversal of a chancellor's findings of fact occurs only when there is no substantial credible evidence in the record to justify her finding." *Luse*, 992 So. 2d 659 at 661(¶5).

## Discussion

### I. Whether Lakiesha's failure to appear at trial bars her appeal from the chancery court's final judgment.

¶37. A threshold question must be answered in this case; namely, whether Lakeisha can pursue her appeal when she failed to attend the trial of the merits of her divorce. Torrance argues that her failure to defend her claims at trial prevents her from raising any issues on appeal.

¶38. Torrance cites *Luse* to support his argument of issue preclusion. In *Luse*, the husband/appellant failed to respond to the wife's complaint and failed to appear at the trial on the merits. *Id.* at 660 (¶3). The chancery court granted the wife a divorce. *Id.* The husband then appealed from the judgment, and more than ten days after the judgment, he filed a Rule 60 motion for relief from the judgment with the trial court. *Id.*; *see* M.R.C.P. 60. Although the husband challenged the distribution of the marital property in his post-trial motion, the motion was dismissed as untimely. *Id.* at 662 (¶10). On appeal, the husband challenged the validity of the judgment, arguing that the proceedings were not conducted in open court and no record of the hearing was made. *Id.* at 661 (¶6). Although we found that we did not have jurisdiction to consider the issue because it was raised for the first time on appeal, we still found it had no merit. *Id.* at 662-63 (¶¶9-10)). The husband also contended that the chancery court failed to make specific findings concerning the equitable distribution

15

of the property as required by *Ferguson*. *Id.* at 663 (¶11). Again we pointed out that "a party is not allowed to raise an issue for the first time on appeal." *Id.* at (¶12). However, without waiving the procedural bar, we discussed and decided the issue. *Id.* at (¶13). We held that the husband presented no evidence to counter the presumption that there was sufficient evidence to support the chancellor's decree. *Id.* The husband also argued that the chancellor erred in not requiring the parties to file a Rule 8.05 financial statement. *Id.* at 664 (¶16). Again, we noted that the husband failed to defend the case in the chancery court and that it was improper for him to raise this issue on appeal. *Id.* at (¶17). Despite this, we held that the chancery court did not err in waiving the filing of financial statements because child support and alimony were not at issue. *Id.* at (¶18).

¶39. A divorce judgment entered when a party fails to appear is "a special kind of default judgment" and to obtain relief from such judgments, absent parties are required to raise the issues in post-trial motions under Rules 52, 59, or 60 of the Mississippi Rules of Civil Procedure. *Lee v. Lee*, 78 So. 3d 326, 328 (¶7) (Miss. 2012). In that case, the husband retained counsel and initiated a divorce proceeding against his wife. *Id.* at 328 (¶2). At some point, the husband began to represent himself pro se during the case. *Id.* On the day of trial, the husband arrived late and walked into the courtroom as the chancellor was giving his ruling from the bench in favor of the wife. *Id.* at (¶3). The husband retained counsel and filed a Rule 59 motion challenging the distribution of the marital property. *Id.* at (¶4). The chancellor denied the motion and the husband appealed pro se. *Id.* This Court held that Mr. Lee had waived his right to challenge the marital property distribution by failing to argue his

case at trial. *Id*. at (¶9). The Supreme Court reversed and remanded the case, finding that although the husband had waived his right to argue the merits of the divorce, his Rule 59 motion properly challenged the distribution of marital assets. *Id*. at 329 (¶13).

¶40. We have also found that a chancellor's failure to mention the *Ferguson* factors or give an explanation for his findings in the distribution of marital property in a divorce case required the case to be remanded for further proceedings. *Reed v. Reed*, 141 So. 3d 450, 455 (¶18) (Miss. Ct. App. 2014). In *Reed*, the wife filed for divorce on the grounds of adultery, habitual inhuman and cruel treatment, desertion, and, alternatively, irreconcilable differences on January 6, 2021. *Id*. at 451 (¶2). The husband, represented by counsel, responded to the complaint and counterclaimed for divorce on the grounds of habitual cruel and inhuman treatment or, in the alternative irreconcilable differences. *Id*. The trial date was set for May 20, 2013. *Id*. at (¶3). The husband's attorney heard from unofficial sources that the chancellor was having health complications and he believed that the case had been reassigned to a different chancellor. *Id*. at 452 (¶3). On April 30, 2013, the husband's counsel sought an order of continuance from the other chancellor, but he was told to wait on this matter as no substitute judge had been assigned to the case. *Id*. Believing that no hearing would be held, neither the husband nor his counsel appeared at the hearing on May 30, 2013. *Id*. After attempting to contact the husband's attorney, the court proceeded with the hearing and awarded the wife a divorce on the grounds of desertion, alimony, and other marital assets. *Id*. at (¶¶4-5). On May 31, 2013, the husband filed a motion for rehearing, challenging the judgment as inequitable and erroneous. *Id*. at (¶6). The chancery court denied the motion

for rehearing. *Id*. at (¶7). The husband appealed, challenging only the property distribution. *Id*. We found, after analyzing *Luse* and *Lee*, that the chancellor only mentioned *Ferguson* in passing and failed to give any explanation to support his findings. *Id*. at 455 (¶17). We reversed and remanded the case for further proceedings regarding the property division. *Id*. at (¶18).

¶41.    More recently, we found that the appellant waived his right to challenge the merits of the divorce but not to challenge the distribution of marital assets. *Speights v. Speights*, 270 So. 3d 968, 975 (¶29) (Miss. Ct. App. 2018). In that case, the wife filed for divorce alleging multiple grounds, including habitual drunkenness. *Id*. at 971 (¶3). The husband, represented by counsel, responded to the complaint. *Id*. at (¶4). The husband's counsel later withdrew, and the husband began to represent himself pro se. *Id*. The husband failed to attend the hearing on the merits of the divorce. *Id*. at (¶5). The chancellor issued a judgment awarding the wife a divorce on the grounds of habitual drunkenness and distributing the parties' marital property. *Id*. at (¶6). The husband retained counsel and filed a motion for enlargement of time to appeal and a motion of enlargement of time in which to seek relief under Mississippi Rule of Civil Procedure 59. *Id*. at (¶7). The chancellor granted the motion of enlargement of time to appeal but did not rule on the motion for additional time to file a post-trial motion. *Id*. at (¶7). On appeal, the husband challenged the merits of the divorce and argued that the chancery court erred in distributing the property without both parties giving Rule 8.05 financial statements. *Id*. He further argued the court failed to make sufficient findings of fact and conclusions of law regarding the distribution of marital

18

property under *Ferguson*. *Id*. We determined that the issue regarding the grounds for divorce had been waived by the husband's failure to appear at the hearing and his subsequent failure to challenge this issue in a timely-filed post-trial motion. *Id*. at 973 (¶17). However, comparing the case to *Luse* and *Lee*, we held that because the husband had responded and challenged the allocation of marital assets during the litigation, his failure to appear at trial did not waive these claims. *Id*. at 975 (¶28). The case was remanded for the parties to present Rule 8.05 financial statements and for the chancellor to make findings of fact and conclusions of law in accordance with *Ferguson*. *Id*. at (¶29).

¶42. This case is similar to *Speights*, in that Lakeisha initiated the divorce proceedings, propounded and answered discovery, and attended at least one hearing. During the litigation, she responded to Torrance's claims regarding the marital assets as did the appellants in *Lee* and *Speights*. Pre-trial, she was represented by counsel, but later represented herself pro se as did the appellants in those cases. In addition, like those appellants, Lakeisha failed to appear at the trial on the merits of the divorce, but unlike them, she filed no post-trial motions for relief. On appeal, Lakeisha challenges the merits of the divorce, the amount of child support, and a portion of the chancellor's distribution of the marital property.

¶43. Following the precedents of *Reed* and *Speights*, we hold that, although Lakeisha waived her right to challenge the merits of the divorce because of her failure to appear at the August 17, 2021, hearing on the merits, because she did challenge the distribution of marital assets during the litigation her failure to appear at trial did not waive this issue on appeal.

¶44. However, matters of child support concern the best interests of the children and are

19

rights held by them that Lakeisha cannot waive. *See Oster v. Ratliff*, 205 So. 3d 1149, 1155 (¶22) (Miss. Ct. App. 2016) (holding that interest on a judgment for past-due child support should be determined even if procedurally waived on appeal because matters involving child support cannot be waived). We have held:

> "Child support is awarded to the custodial parent for the benefit and protection of the child, the underlying principle being the legal duty owed to the child for the child's maintenance and best interest." *Artz v. Norris*, 163 So. 3d 983, 988 (¶14) (Miss. Ct. App. 2015) (quoting *Alexander v. Alexander*, 494 So. 2d 365, 368 (Miss. 1986)). "Such benefits belong to the child," not the custodial parent, "and the custodial parent has a fiduciary duty to hold them for the use of the child." *Caldwell v. Atwood*, 179 So. 3d 1210, 1216 (¶19) (Miss. Ct. App. 2015).

*Schimpf v. Schimpf Hardy*, No. 2017-CA-01499-COA, 2019 WL 2265258, at *3 (¶14) (Miss. Ct. App. May 28, 2019).

¶45. Finally, because she never filed a motion to recuse the substitute chancery court judge, Lakeisha's complaint that the second chancery court judge did not recuse herself is procedurally barred. This case is similar to *Tubwell v. Grant*, 760 So. 2d 687, 689 (¶8) (Miss. 2000), where Tubwell failed to object or file a motion asking the judge to recuse himself. When he attempted to raise the issue on appeal, the Mississippi Supreme Court found the issue to be procedurally barred. Likewise, here Lakeisha filed no motion to recuse the substitute chancery court judge and she is procedurally barred from raising that issue on appeal.

**II. Whether Lakeisha's issues are procedurally barred because she fails to identify issues and cite authority.**

46. Also problematic is Lakeisha's failure to identify the legal issues she challenges as

required by Rule 28(a)(3)[11] of the Mississippi Rules of Appellate Procedure and her failure to cite authority to support the position she takes.

¶47.   "Our caselaw clearly provides that the failure to cite supporting legal authority precludes consideration of an issue on appeal." *Hardin v. Hardin*, 335 So. 3d 1088, 1094 (¶21) (Miss. Ct. App. 2022) (citing *Greer v. Greer*, 312 So. 3d 414, 415 (¶9) (Miss. Ct. App. 2021)); *see also Welch v. Bank One Nat'l Ass'n*, 6 So. 3d 435, 439 (¶14) (Miss. Ct. App. 2009) (quoting *Kirkley v. Forrest Cnty Gen. Hosp.*, 991 So. 2d 652, 662 (¶35) (Miss. Ct. App. 2008)).  We note that Lakeisha has been proceeding in this case on appeal pro se.  But "[w]hile pro se litigants are afforded some leniency, they 'must be held to substantially the same standards of litigation conduct as members of the bar.'" *Dobbs v. Crawford*, 177 So. 3d 448, 452 (¶13) (Miss. Ct. App. 2015) (quoting *Sumrell v. State*, 972 So. 2d 572, 574 (¶6) (Miss. 2008)).  "Even a pro se litigant is held to the same procedural and evidentiary requirements as individuals represented by counsel." *Robinson v. Newsome*, 88 So. 3d 767, 769 (¶4) (Miss. Ct. App. 2011) (quoting *Dethlefs v. Beau Maison Dev. Corp.*, 511 So. 2d 112, 118 (Miss. 1987)).

¶48.   Under the "Statement of Issues" section of her brief, Lakeisha contends that the

---

[11] Mississippi Rule of Appellate Procedure 28 requires that a brief contain the following:

> (a)(3) *Statement of Issues*.  A statement shall identify the issues presented for review. No separate assignment of errors shall be filed. Each issue presented for review shall be separately numbered in the statement. No issue not distinctly identified shall be argued by counsel, except upon request of the court, but the court may, at its option, notice a plain error not identified or distinctly specified.

21

divorce was granted based on "false and insufficient evidence" and "with prejudice in favor of Torrance." In her section entitled "Statement of the Case," she takes each finding in the chancery court's judgment and presents her own allegedly contradictory "facts." Lakeisha must mistakenly believe that the letter she wrote to the chancery court judge and filed in the record constituted a proper presentation of testimony. However, the letter was not notarized and certainly cannot substitute for her physical presence at trial where Torrance could cross-examine her. In addition, although Lakeisha testified at the hearing on temporary relief, the matters before the court at that time were visitation and the status of one of the Cadillacs. The court deferred any testimony on the merits of the case until trial. Lakeisha should have presented her "facts" to the chancery court at that time and supported them with competent evidence. We are not a court of original jurisdiction and will not accept the factual presentations Lakeisha makes on appeal. "Courts of review are not to undermine trial court authority by replacing the judgment with its own." *Miller v. Miller*, 838 So. 2d 295, 297 (¶4) (Miss Ct. App. 2002). We cannot and will not find error with the chancery court's findings when Lakeisha intentionally chose not to present her case at the trial for the chancery court's determination of their truth.[12]

¶49.　In her "Argument" section, Lakeisha takes each order contained in the chancery court judgment and argues why the order is inappropriate. For example, Lakeisha challenged the judge's decision to equally divide the equity interest in the marital home between the parties. She argued that the house she was awarded was too small for her family and that the judge

_____

[12] In her brief, Lakiesha gives her reasons why she did not attend the trial.

"did not use any emotional intelligence when making the decision, as she never took into consideration, the Appellant's financial hardships or emotional state as it related to the appraising and potential selling of the property. . . ." Lakeisha's reply brief is much the same. Nowhere in either brief does Lakeisha raise any *legal* authority to support her claims that the chancery court erred. Accordingly, we find that she has waived our consideration of any argument she presents on appeal concerning the findings and orders of the chancery court concerning the grounds for divorce.

### III. Whether the chancery court erred in the amount of child support ordered.

¶50. The chancery court ordered Torrance to pay $1,750 per month for each of the parties' two children. Lakeisha claims on appeal that this is not sufficient.

¶51. "The award of child support is a matter within the discretion of the chancery court, and it will not be reversed unless the chancery court was manifestly wrong in its finding of fact or manifestly abused its discretion." *Jefferson v. Jefferson*, 327 So. 3d 1085, 1087 (¶11) (Miss. Ct. App. 2021). Mississippi Code Annotated section 43-19-101 (Rev. 2021) establishes statutory guidelines for chancery courts to use in setting child support. For two children, the statute provides that child support of 20% of a parent's adjusted gross income be ordered. Subsection 3 of the statutory provision sets out the manner to calculate the "adjusted gross income." In this case, Torrance reported on his Rule 8.05 financial statement a gross monthly income from salary and wages of $28,333. Deductions for taxes, social security, and Medicare amounted to $12,432.46. His adjusted gross income then amounted to $15,900.54. Twenty percent of this amounts to approximately $3,180. Therefore, the

23

chancery court's order of $3,500 thus complies with and exceeds the statutorily required amount and there appears to be no abuse of discretion.

¶52. However, we do note that subsection 4 of the statute requires a written finding by the chancery court judge as to whether the application of the guidelines is reasonable when an individual's income exceeds $100,000.[13] *Lageman v. Lageman*, 313 So. 3d 1075, 1083 (¶12) (Miss. Ct. App. 2021). In *Peters v. Peters*, 906 So. 2d 64 (Miss. Ct. App. 2004), this Court noted that the statute required written findings when there was an income in excess of the statutory amount. *Id*. at 72 (¶35). At the time, the written finding was required when the income was in excess of $50,000. *Id*. We held that the chancellor had made written findings, stating:

> The chancellor declared in his written judgment, "The Court recognizes that the gross annual income stated herein exceeds the $50,000.00 recited by the statute. At this point in time, however, the Court sees no reason to deviate from the statutory child support guideline of twenty percent of the adjusted gross income." Michael argues that this statement was not enough to satisfy the requirements of § 43-19-101(4). We disagree. While this statement is rather succinct, it is nonetheless a written finding of reasonableness.

*Id.* at (¶36). We held that the chancellor had complied with the written finding requirement of section 43-19-101(4).

¶53. In this case, Torrance's adjusted gross income annually totaled $190,800.00, but the

---

[13] Section 43-19-101(4) reads:

In cases in which the adjusted gross income as defined in this section is more than One Hundred Thousand Dollars ($100,000.00) or less than Ten Thousand Dollars ($10,000.00), the court shall make a written finding in the record as to whether or not the application of the guidelines established in this section is reasonable. The court shall take into account the basic subsistence needs of the obligated parent who has a limited ability to pay.

24

chancery court judge made no written findings as required by the statute concerning the reasonableness of the application of the guidelines or the amount the court ordered. Because we are remanding this case for the chancery court to consider the unaddressed items in the distribution of the parties' property, the chancery court should also make the necessary written findings required under Section 43-19-101(4) concerning her determination of child support.

¶54. The separate opinion disagrees and asserts that Lakeisha waived the issue of the chancery court's need to make written findings with respect to child support, citing *Robinson v. Brown*, 58 So. 3d 38 (Miss. Ct. App. 2011), and *Lack v. Nash*, 751 So. 2d 1078 (Miss. Ct. App. 1999). However in a more recent case, *Oster v. Ratliff*, 205 So. 3d 1149, 155 (¶22) (Miss. Ct. App. 2016), we held that the issue of child support cannot be waived. In that contempt case, the chancery court failed to award the wife, Consuelo, post-judgment interest on the back child support the court found the husband, Creig, owed. *Id*. Consuelo raised the issue on appeal, but because she had not raised it with the chancery court, Creig argued that the issue was waived. *Id*. We held that "[u]nder a different set of circumstances, we would agree with Creig that the issue is procedurally barred because Consuelo failed to raise this issue for resolution by the chancery court, *but because this involves child support, which cannot be waived,* we see no reason why interest on it should be waived." *Id.* (emphasis added) (citations omitted). In the case at hand, the amount of child support is likewise an issue that cannot be waived.

¶55. Our supreme court has held that the duty to support is a vested right of the child,

25

*Calton v. Calton*, 485 So. 2d 309, 310 (Miss. 1986), which parents cannot bargain or contract away. *Houck v. Ousterhout*, 861 So. 2d 1000, 1002 (¶8) (Miss. 2003). Because of this, in our view, a child should not be penalized because a parent does not do everything necessary to preserve the issue of child support on appeal. This case is not about a parent missing court, but about children potentially missing fair and reasonable support.

¶56. In addition, as we said in *Oster*, the circumstances of the case matter. In the *Robinson* opinion that the separate opinion cites, the chancery court had explained in its bench ruling how it calculated the child support amount, using the wife's recent check stub, financial disclosures, and testimony. *Robinson*, 58 So. 3d at 46 (¶24). In this case, the chancery court's only ruling from the bench was to grant Torrance a divorce. The court made no findings at all concerning how it calculated the child support. Given the mandatory language of section 43-19-101(4) that the chancery court *shall* make a written finding if the child support guidelines amount is reasonable when the paying party's income exceeds $100,000, the fact that Torrance's income was nearly twice that, and the absence of any explanation in the record as to how the court set the child support amount, remand for such findings is necessary. Obviously, in making its findings, the chancery court shall keep in mind that Lakeisha has an obligation to support the children as well as Torrance.

### IV. Whether the chancery court erred in its distribution of the parties' marital property.

¶57. In her brief, Lakeisha specifically challenges the distribution of the marital home and the award of the 2014 Cadillac CTS and 2005 GMC Sierra to Torrance. Although she did not address the other potential marital property requiring division, in her complaint for

26

divorce, Lakeisha sought a portion of other assets titled in Torrance's name such as checking, savings, retirement, and other financial accounts, which were wholly unaddressed by the chancery court judge. Torrance listed those accounts on his Rule 8.05 financial statement as well as other financial debts, which the chancery court failed to identify, categorize, value, and distribute according to *Ferguson* factors.

¶58. The Mississippi Supreme court has mandated that in a divorce, the chancery court is to make an equitable distribution of marital property. *Ferguson*, 639 So. 2d at 928. The *Ferguson* court set out the steps to accomplish this, including (1) the classification of assets as marital and non-marital; (2) the valuation of the assets; (3) an equitable division of the marital property; and (4) the award of alimony if needed after the division of the assets. *Id*.; *see also Branch v. Branch*, 174 So. 3d 932, 942-43 (¶¶39-41) (Miss. Ct. App. 2015). "The law presumes that all property acquired or accumulated during marriage is marital property." *Crew v. Tillotson*, 282 So. 3d 776, 782 (¶23) (Miss. Ct. App. 2019) (quoting *Stroh v. Stroh*, 221 So. 3d 399, 409 (¶27) (Miss. Ct. App. 2017) (citing *Hemsley v. Hemsley*, 639 So. 2d 909, 914 (Miss. 1994))).

¶59. *Ferguson* also set out a list of eight factors chancery courts are to consider in their division of marital property. *Id*. The policy consideration behind this requirement is "not only essential for appellate purposes," but to provide trial courts "a checklist to assist in the accuracy of their rulings. . . and to reduce unintended errors that may affect the court's ultimate decision. The absence of an analysis of these factors and failure to apply the law to the facts at hand create error." *Speights*, 270 So. 3d at 975 (¶27) (quoting *Heimert v.*

27

*Heimert*, 101 So. 3d 181, 187 (¶24) (Miss. Ct. App. 2012)). Although the chancery court need not evaluate every *Ferguson* factor, the chancellor must consider the factors relevant to the case, on the record, in every case. *Id.* (citing *Sproles v. Sproles*, 782 So. 2d 742, 748 (¶25) (Miss. 2001)).

¶60.    In this case, the chancery court failed to mention any of the *Ferguson* factors either during the divorce hearing or in the final judgment of divorce. Moreover, the chancery court failed to classify all the assets as marital or non-marital or value any asset, other than the marital home and 2014 Cadillac CTS.[14] The chancery court awarded the parties their respective retirements without identifying and valuing those accounts. Significantly, the chancery court failed to address any other financial accounts that Torrance identified, including CDs and accounts titled in his name only, which he valued at $201,802.11. Lakeisha had specifically claimed an interest in these accounts in her complaint. "A spouse who has made a material contribution toward the acquisition of an asset titled in the name of the other may claim an equitable interest in such jointly accumulated property." *Hemsley*, 639 So. 2d at 913 (citing *Jones v. Jones*, 532 So. 2d 574, 580-81 (Miss. 1988)). In addition, the chancery court failed to address the debts of the parties that Torrance listed on his Rule 8.05 financial statement, which Lakeisha may be partially obligated to pay.

¶61.    Although the court properly proceeded with the hearing on the divorce despite Lakeisha's absence, the court was still required to make the necessary *Ferguson* findings in its property distribution. In such cases there is a rebuttable presumption that all property

---

[14] The chancery court properly awarded each party the homes they owned prior to the marriage because those homes were non-marital assets. *Hemsley*, 639 So. 2d at 914.

28

accumulated during the marriage is marital, *Rhodes v. Rhodes*, 52 So. 3d 430, 437 (¶23) (Miss. Ct. App. 2011), thus Lakeisha may be entitled to a portion of these accounts. Torrance could rebut that presumption by showing either that the accounts were his prior to the marriage and/or that Lakeisha contributed nothing to the marriage to cause an increase in the value of these accounts. *Id.* However, at trial, Torrance gave no testimony concerning the circumstances surrounding the creation and maintenance of these CDs and accounts in order to prove that he alone was entitled to keep them.

¶62. Accordingly, we find that the chancery court erred in failing to classify, value, and equitably distribute all of the assets of the parties, including but not limited to the CDs and other financial accounts and debts of the parties. Therefore, we remand the case for the chancery court to do so.

## Conclusion

¶63. Because Lakeisha failed to appear at trial, file any post-trial motions, or cite any legal authority to support her challenge to the grant of divorce to Torrance, that issue is procedurally barred on appeal. We affirm the chancery court's order granting a divorce to Torrance, and the chancery court's categorization of the homes the parties owned prior to the marriage as non-marital property. However, we reverse and remand on the issue of property distribution for the chancery court to categorize and value all the parties' property and, after making specific findings of fact and conclusions of law consistent with the steps outlined in *Ferguson*, equitably distribute all the property of the parties. In addition, on remand, the chancery court shall issue written findings concerning the reasonableness of the amount of

29

child support ordered pursuant to section 43-19-101(4).

¶64.   **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

　　**BARNES, C.J., CARLTON, P.J., WESTBROOKS, LAWRENCE, SMITH AND EMFINGER, JJ., CONCUR.   WILSON, P.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. McCARTY, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY GREENLEE, J.**

　　**McCARTY, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶65.   While I agree we must remand for the limited purpose of compliance with *Ferguson*'s requirement to classify marital and non-marital assets, under our precedent the wife has waived any issue on appeal regarding the deviation from the child support guidelines.  Her failure to appear at trial and file post-trial motions creates a procedural bar that she cannot hurdle.

¶66.   Ample authority holds that "[a] party's failure to raise an issue at trial may constitute a waiver of the issue for purposes of appeal."  Deborah H. Bell, *Bell on Mississippi Family Law* § 19.12[7][e], at 745 (3d ed. 2020).  In one such case, a wife protested on appeal "that the chancellor erred in failing to provide written findings of reasonableness as required by the statutory guidelines and in failing to consider whether a lower amount of child support was more appropriate."  *Robinson v. Brown*, 58 So. 3d 38, 44 (¶18) (Miss. Ct. App. 2011).  The trial court determined she should pay 20% of her income in child support—the same amount as the father in this case.  *Id*.

¶67.   Yet we determined the wife "neither raised an objection during trial nor sought a post-trial amendment regarding the adequacy of the chancellor's findings of the

30

reasonableness of the child-support guidelines and the amount of child-support award in this case." *Id*. As a result, we found her "challenge of the chancellor's findings in the instant case procedurally barred." *Id*. at 46 (¶23).

¶68. Similarly, we have held that a husband could not argue "the chancellor committed reversible error in the original decree by failing . . . to make written or specific findings in regard to the deviation between the support awarded and the statutory guidelines" since he "did not raise this issue until he filed his motion for new trial on the petition to modify" when he had earlier stipulated to it. *Lack v. Nash*, 751 So. 2d 1078, 1083 (¶17) (Miss. Ct. App. 1999). So we held his "objection comes too little too late." *Id*.

¶69. And frankly, to the extent the majority extends grace to the litigant in this appeal where before we have declined to so, it is not deserved. The wife refused to appear at trial despite that she herself initiated the divorce, made personal attacks on the long-serving chancellor, and devoted a large part of her pro se briefing to needlessly and improperly inflict cruelties on her former mother-in-law. If there is ever a case for waiver, this is it.

¶70. Many moons ago, one great thinker on Mississippi law explained why waiver was essential to the orderly disposition of law:

> [I]f it were permitted to reverse a case on points or objections not raised in the trial court, then there could be no assurance but that after being tried the second time another question not raised in that trial would be sprung on the second appeal, and this being listened to and the case again reversed, the process could be continued . . . and there would be no end to the case until the opposite party, if humble or weak, should be harassed and driven into a surrender or into a ruinous compromise to avoid the bankruptcy of litigation.

Hon. V.A. Griffith, *Mississippi Chancery Practice* § 676, at 746 (2d ed. 1950). This warning

from over 70 years ago applies directly to this appeal.

¶71. On remand, the trial court can rule upon the necessary *Ferguson* checklist on the record and without a hearing, but the proceeding should not be re-opened for any other reason. For that reason, I respectfully dissent in part from the majority's reasoned opinion.

**GREENLEE, J., JOINS THIS OPINION.**